# EXHIBIT A

VERIFICATION

STATE OF ARIZONA          )
                          ) ss.
County of Maricopa        )

    I, KARA L. KLIMA, hereby state, under the penalty of perjury, that the following information is true to my knowledge, information and belief:

    1.    I am the attorney for Defendants State of Arizona, Barbara Bennett, Laura McGlynn, Shelley Ashmore, Phyllis Mitchum, Stephanie Cooper, Jeannine Janowitz, and Gregory McKay in the matter of *Austin Neeley, et al. v. State of Arizona, et al.,* Maricopa County Superior Court Case No. CV2019-014318, before the Honorable Danielle Viola.

    2.    On December 23, 2019, I filed a Notice of Removal under 28 U.S.C. § 1441(b) seeking to remove to the United States District Court for the District of Arizona.

    3.    In compliance with 28 U.S.C. § 1441(a) and L.R.Civ. 3.7(b), I certify that the attached documents are true and accurate copies of pleadings and other documents that were filed in the Superior Court of the State of Arizona, Maricopa, in Case No. CV2019-014318.

    4.    Also attached is a true and accurate copy of the court docket in *Austin Neeley, et al. v. State of Arizona, et al.,* Maricopa County Superior Court Case No. CV2019-014318

    I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

    DATED this 24th day of December, 2019.


_____
KARA L. KLIMA

8423322



Select Language
Powered by Google Translate

# Civil Court Case Information – Case History

## Case Information

| | | | |
|---|---|---|---|
| Case Number: | CV2019-014318 | Judge: | Viola, Danielle |
| File Date: | 11/6/2019 | Location: | Downtown |
| Case Type: | Civil | | |

## Party Information

| Party Name | Relationship | Sex | Attorney |
|---|---|---|---|
| Austin Neeley | Plaintiff | Unknown | Thomas Connelly |
| Brittany Robinette | Plaintiff | Female | Thomas Connelly |
| V S R | In The Matter Of (IMO) | Unknown | Pro Per |
| A L N | In The Matter Of (IMO) | Unknown | Pro Per |
| A R N | In The Matter Of (IMO) | Unknown | Pro Per |
| State Of Arizona, The | Defendant | | Pro Per |
| Arizona Department Of Child Safety | Defendant | | Pro Per |
| Barbara Bennett | Defendant | Female | Pro Per |
| Laura McGlynn | Defendant | Female | Pro Per |
| Shelley Ashmore | Defendant | Female | Pro Per |
| Phyllis Mitchum | Defendant | Male | Pro Per |
| Stephanie Cooper | Defendant | Female | Pro Per |
| Jeannine Janowitz | Defendant | Female | Pro Per |
| Andrea Thomas | Defendant | Female | Pro Per |
| Grossman & Grossman Ltd | Defendant | | Pro Per |
| Heather De Soler | Defendant | Female | Pro Per |
| Heather De Soler P L L C | Defendant | | Pro Per |
| Gregory McKay | Defendant | Male | Pro Per |

## Case Documents

| Filing Date | Description | Docket Date | Filing Party |
|---|---|---|---|
| 11/27/2019 | AFS - Affidavit Of Service | 12/9/2019 | |
| NOTE: STATE OF ARIZONA | | | |
| 11/6/2019 | COM - Complaint | 11/7/2019 | |
| 11/6/2019 | CCN - Cert Arbitration - Not Subject | 11/7/2019 | |
| 11/6/2019 | CSH - Coversheet | 11/7/2019 | |

## Case Calendar

**There are no calendar events on file**

## Judgments

**There are no judgments on file**

Thomas A. Connelly #019430
Robert T. Mills #018853
Sean A. Woods #028930
MILLS + WOODS LAW, PLLC
5055 N. 12ᵗʰ St. #101
Phoenix, AZ 85014
480 999 4556
*Attorney s for Plaintiff*

CLERK OF THE
SUPERIOR COURT
RECEIVED CCC #3
NIGHT DEPOSITORY

19 NOV 27  PM 4: 55

IN THE SUPERIOR COURT
COUNTY OF MARICOPA, STATE OF ARIZONA

FILED
BY RMerino DEP

|  |  |
|---|---|
| AUSTIN NEELY, ET AL | NO. CV2019-014318 |
| Plaintiffs | |
| vs. | CERTIFICATE OF SERVICE |
| STATE OF ARIZONA, ET AL | BY PRIVATE PROCESS SERVER |
| Defendants | |

I, Jeff Bourne, being fully qualified to serve process under ARCP 4(e) within the State of Arizona and having been appointed by Maricopa County Superior Court, did receive the following documents:

SUMMONS
COMPLAINT
CERTIFICATE OF COMPULSORY ARBITRATION

In each instance I personally served a true copy of each document listed above on those named below in the manner, and at the time shown below.

Service of the above-named documents was made upon **State Of Arizona** by leaving a copy with Brian Munoz, Admin Asst. III (authorized to accept service) at 4:08pm on November 25, 2019 at 2025 N. Central Ave., Phoenix, AZ 85012.

DATED: 11/25/19

JEFF BOURNE     #5585

I declare under penalty of perjury that the foregoing is true and correct and was executed on this date.

SIGMA PROCESS SERVICE
1753 E. BROADWAY #302
TEMPE, AZ 85282
480 736 1282

CLERK OF THE SUPERIOR COURT
FILED

NOV 0 6 2019  5:32pm

G. Vega, Deputy

1  Thomas A. Connelly (AZ Bar #019430)
2  Robert T. Mills (AZ Bar #018853)
   Sean A. Woods (AZ Bar #028930)
3  **MILLS + WOODS LAW PLLC**
   5055 North 12th Street, Suite 101
4  Phoenix, Arizona 85014
   Telephone 480.999.4556
5  docket@millsandwoods.com

6  DeeAn Gillespie Strub (AZ Bar #009987)
   Kristina Reeves (AZ Bar #031171)
7  GILLESPIE, SHIELDS, GOLDFARB,
   & TAYLOR
8  7319 North 16th Street
9  Phoenix, Arizona 85020
   Telephone: (602) 870-9700
10 Fax: (602) 870-9783
11 mailroom@gillaw.com

12 *Attorneys for Plaintiffs*

PAID
$333.00

New Civil Case
R#

13            **IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

14              **IN AND FOR THE COUNTY OF MARICOPA**

15 AUSTIN NEELEY, an individual;        Case No.: CV 2019-014318
16 BRITTANY     ROBINETTE,     an
   individual; V.S.R., a minor, through       **COMPLAINT**
17 her  parent  and  guardian  Brittany
   Robinette; A.L.N., a minor, through
18 her  parents  and  guardians  Austin
19 Neeley and Brittany Robinette; A.R.N.,    **JURY TRIAL REQUESTED**
   a minor, through her parents and
20 guardians Austin Neeley and Brittany
21 Robinette,

22              Plaintiffs,

23        v.

24
   THE   STATE   OF   ARIZONA,   a
25 governmental    entity;    ARIZONA
   DEPARTMENT OF CHILD SAFETY, a
26 governmental    entity;    BARBARA
   BENNETT, individually and as an
27 employee with the State of Arizona
28

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014-2555
480.999.4556

Department of Child Safety and JOHN DOE BENNETT, her spouse; LAURA MCGLYNN, individually and as an employee with the State of Arizona Department of Child Safety and JOHN DOE MCGLYNN, her spouse; SHELLEY ASHMORE, individually and as an employee with the State of Arizona Department of Child Safety and JOHN DOE ASHMORE, her spouse; PHYLLIS MITCHUM, individually and as an employee with the State of Arizona Department of Child Safety and JOHN DOE MITCHUM, her spouse; STEPHANIE COOPER, individually and as an employee with the State of Arizona Department of Child Safety and JOHN DOE COOPER, her spouse; JEANNINE JANOWITZ, individually and as an employee with the State of Arizona Department of Child Safety and JOHN DOE JANOWITZ, her spouse; ANDREA THOMAS, individually and as a services provider for the State of Arizona Department of Child Safety and JOHN DOE THOMAS, her spouse; GROSSMAN & GROSSMAN, LTD, an Arizona corporation, individually and as a services provider for the State of Arizona Department of Child Safety; HEATHER DE SOLER, individually and as a services provider for the State of Arizona Department of Child Safety and JOHN DOE DE SOLER, her spouse; DR. HEATHER DE SOLER PLLC, an Arizona professional limited liability company, individually and as a services provider for the State of Arizona Department of Child Safety; GREGORY MCKAY, individually and

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

2

as Director, Arizona Department of
Child Safety and JANE DOE MCKAY,
his spouse; JOHN and JANE DOES 1-
5; and BLACK ENTITIES 1-5,

Defendants.

Plaintiffs Austin Neeley, Brittany Robinette, V.S.R., A.L.N., and A.R.N., (collectively "Plaintiffs") by and through their counsel, file this Complaint against Defendants The State of Arizona, Arizona Department of Child Safety, Barbara Bennett and John Doe Bennett, Laura McGlynn and John Doe McGlynn, Shelley Ashmore and John Doe Ashmore, Phyllis Mitchum and John Doe Mitchum, Stephanie Cooper and John Doe Cooper, Jeannine Janowitz and John Doe Janowitz, Andrea Thomas and John Doe Thomas, Grossman & Grossman, Ltd., Heather De Soler and John Doe De Soler, Dr. Heather De Soler, PLLC, Gregory McKay and John Doe McKay, John and Jane Does 1-5, and Black Entities 1-5. Plaintiffs state and allege as follows:

## JURISDICTION AND VENUE

1.    Plaintiffs bring this civil rights lawsuit pursuant to the Fourth and Fourteenth Amendments to the United States Constitution, the Civil Rights Act of 1871, 42 U.S.C. § 1983, A.R.S. § 12-641, and Arizona common law.

2.    The amount in controversy exceeds the minimal jurisdictional limits of this Court.

3.    This Court has original subject matter jurisdiction over the claims made in this Complaint pursuant to Article 6, Section 14 of the Arizona Constitution.

4.    The acts and events giving rise to the causes of action alleged herein occurred in Maricopa County, Arizona, and all Defendants are subject to the personal jurisdiction of this Court in accordance with A.R.S. § 12-123 and as otherwise provided under Arizona law and the Arizona Rules of Civil Procedure.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

5.    Venue lies in this Court pursuant to A.R.S. § 12-401 in that, among other reasons, the specific acts giving rise to the causes of action alleged herein occurred with primary effect in Maricopa County, Arizona.

## THE PARTIES

6.    Plaintiff Austin Neeley is an individual, a citizen of the United States, and a resident of Arizona. At relevant times to the present Complaint, Austin resided in Maricopa County, Arizona.

7.    Brittany Robinette is an individual, a citizen of the United States, and a resident of Arizona. At relevant times to the present Complaint, Brittany resided in Maricopa County, Arizona.

8.    V.S.R., a fictitious name used herein to protect the minor's privacy, is a minor, a citizen of the United States, and a resident of Arizona. At relevant times to the present Complaint, V.S.R. resided in Maricopa County, Arizona. At the time the incidents giving rise to the causes of action in this Complaint began, V.S.R. was three-years old. V.S.R. is now, at the time this Complaint is filed, six years old.

9.    A.L.N., a fictitious name used herein to protect the minor's privacy, is a minor, a citizen of the United States, and a resident of Arizona. At relevant times to the present Complaint, A.L.N. resided in Maricopa County, Arizona. At the time the incidents giving rise to the causes of action in this Complaint began, A.L.N. was approximately one-year old. A.L.N. is subject to the Indian Child Welfare Act (23 USC § 1903). A.L.N. is now, at the time this Complaint is filed, four years old.

10.    A.R.N., a fictitious name used herein to protect the minor's privacy, is a minor, a citizen of the United States, and a resident of Arizona. At relevant times to the present Complaint, A.R.N. resided in Maricopa County, Arizona. At the time the incidents giving rise to the causes of action in this Complaint began, A.R.N. was approximately one-month old. A.R.N. is subject to the Indian Child Welfare Act (23 USC § 1903). A.R.N. is now, at the time this Complaint is filed, three years old.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

11.    Defendant The State of Arizona is a governmental entity that acts by and through its officials, employees, and agents, including without limitation each of the other Defendants in this action.

12.    Defendant the Arizona Department of Child Safety ("DCS") is a governmental entity that acts by and through its officials, employees, and agents, including without limitation each of the other non-governmental entity Defendants in this action.

13.    Defendant Barbara Bennett is an individual who resided in Maricopa County, Arizona, at all times relevant to this Complaint. Ms. Bennett was, at all times relevant to the present Complaint, an employee of the State of Arizona through the DCS. At all times relevant to this Complaint, Ms. Bennett was acting under the color of law as a DCS case manager. She is named herein in her individual capacity, as that term is used within the jurisprudence of the Civil Rights Act of 1871, 42 U.S.C. § 1983.

14.    Defendant Laura McGlynn is an individual who resided in Maricopa County, Arizona, at all times relevant to this Complaint. Ms. McGlynn was, at all times relevant to this Complaint, an employee of the State of Arizona through the DCS. At all times relevant to this Complaint, Ms. McGlynn was acting under the color of law as a DCS case manager. She is named herein in her individual capacity, as that term is used within the jurisprudence of the Civil Rights Act of 1871, 42 U.S.C. § 1983.

15.    Defendant Shelly Ashmore is an individual who resided in Maricopa County, Arizona, at all times relevant to the present Complaint. Ms. Ashmore was, at all times relevant to this Complaint, an employee of the State of Arizona through the DCS. At all times relevant to this Complaint, Ms. Bennett was acting under the color of law as a DCS case manager. She is named herein in her individual capacity, as that term is used within the jurisprudence of the Civil Rights Act of 1871, 42 U.S.C. § 1983.

16.    Defendant Phyllis Mitchum is an individual who resided in Maricopa County, Arizona, at all times relevant to this Complaint. Ms. Mitchum was, at all times relevant to this Complaint, an employee of the State of Arizona through the DCS. At all times relevant to this Complaint, Ms. Mitchum was acting under the color of law as a DCS

5

case manager. She is named herein in her individual capacity, as that term is used within the jurisprudence of the Civil Rights Act of 1871, 42 U.S.C. § 1983.

17.    Defendant Stephanie Cooper is an individual who resided in Maricopa County, Arizona, at all times relevant to this Complaint. Ms. Cooper was, at all times relevant to this Complaint, an employee of the State of Arizona through the DCS. At all times relevant to this Complaint, Ms. Cooper was acting under the color of law as a DCS case manager. She is named herein in her individual capacity, as that term is used within the jurisprudence of the Civil Rights Act of 1871, 42 U.S.C. § 1983.

18.    Defendant Jeannine Janowitz is an individual who resided in Maricopa County, Arizona, at all times relevant to this Complaint. Ms. Janowitz was, at all times relevant to this Complaint, an employee of the State of Arizona through the DCS. At all times relevant to this Complaint, Ms. Janowitz was acting under the color of law as a DCS case manager. She is named herein in her individual capacity, as that term is used within the jurisprudence of the Civil Rights Act of 1871, 42 U.S.C. § 1983.

19.    Defendant Andrea Thomas is an individual who resided in Maricopa County, Arizona, at all times relevant to this Complaint. At all times relevant to this Complaint, Ms. Thomas provided contract services for the State of Arizona through the DCS. At all times relevant to this Complaint, Ms. Thomas was acting under the color of law as a DCS service provider. She is named herein in her individual capacity, as that term is used within the jurisprudence of the Civil Rights Act of 1871, 42 U.S.C. § 1983.

20.    Defendant Grossman & Grossman, Ltd. is an Arizona corporation that was authorized to, and did, conduct business in the State of Arizona, including providing mental health care services to children in the care and/or custody of DCS. Defendant Andrea Thomas was at all times relevant to this action employed by Grossman & Grossman, Ltd.

21.    Defendant Heather De Soler is an individual who resided in Maricopa County, Arizona, at all times relevant to this Complaint. At all times relevant to this Complaint, Ms. De Soler provided contract services for the State of Arizona through the DCS. At all times relevant to this Complaint, Ms. De Soler was acting under the color of

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

6

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

law as a DCS service provider. She is named herein in her individual capacity, as that term is used within the jurisprudence of the Civil Rights Act of 1871, 42 U.S.C. § 1983.

22.     Defendant Dr. Heather De Soler, PLLC is an Arizona professional limited liability company that was authorized to, and did, conduct business in the State of Arizona, including providing mental health care services to families and children in the care and/or custody of DCS. Defendant Heather De Soler was at all times relevant to this action the owner of and/or employed by Dr. Heather De Soler, PLLC.

23.     Defendant Gregory McKay is an individual who resided in Maricopa County, Arizona, at times relevant to the present Complaint. Mr. McKay was, at all times relevant to this Complaint, the Director of the DCS. At all times relevant to this complaint, Mr. McKay was the official policymaker for the DCS. At all times relevant to this complaint, Mr. McKay was acting under the color of law. He is named herein in his individual capacity as that term is used within the jurisprudence of the Civil Rights Act of 1871, 42 U.S.C. § 1983.

24.     John and Janes Does 1-5 and Black Entities 1-5 are persons, agents, services, employees, business entities, partnerships, corporations, and/or unincorporated associations subject to suit in a common name whose true names are unknown to Plaintiffs and who are, therefore, designated by fictitious names. Plaintiffs will ask leave of the Court to substitute the true names of the said parties prior to the entry of Judgement herein.

25.     Whenever in this Complaint reference is made to any act of "Defendants" such allegations shall be deemed to mean all named Defendants, John and Jane Does 1-5, and Black Entities 1-5, or their officers, agents, managers, members, representatives, employees, heirs, assignees, customers, tenants, and that they did or authorized such acts while actively engaged in the operation, management, direction, or control of the affairs of Defendants and while acting within the course and scope of their duties, except as specifically alleged otherwise.

26.     At all times herein mentioned and with respect to the specific matters alleged in this Complaint, Plaintiffs allege, upon information and belief, that each Defendant was

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

1  and is the agent, employee, principal, employer, co-conspirator, or any combination thereof

2  of each of the remaining defendants, vice versa, or both. In addition, Plaintiffs allege, upon

3  information and belief, that the Defendants named herein, and each of them, are responsible

4  in some manner for the occurrences herein alleged, and that each of the above Defendants

5  conspired with, directed, ratified, approved, aided, abetted, jointly collaborated, or any

6  combination thereof, each of the remaining Defendants in committing the acts herein

7  alleged or failed to prevent such acts when having the power, duty, or authority to do so

8  with full knowledge of said acts.

9      27.    Plaintiffs allege, upon information and belief, that each of the Defendants

10 was acting under color of law in committing the acts herein alleged.

11 **FACTUAL ALLEGATIONS**[1]

12 **I.    BACKGROUND**

13      28.    V.S.R. (DOB 9/22/2012) is the natural child of David Rolan and Ms.

14 Robinette.

15      29.    V.S.R. was born with many medical concerns and was medically fragile for

16 most of her early childhood. As a result, V.S.R. bruises very easily and V.S.R. often had

17 bruises throughout the entirety of acts and events giving rise to the claims that are the

18 subject of this Complaint.

19      30.    Mr. Rolan and Ms. Robinette were previously involved in a romantic

20 relationship. At various times during their relationship, Mr. Rolan was physically abusive

21 of Ms. Robinette. Due to incidents of domestic violence that the medical staff at V.S.R.'s

22 birthing hospital observed between the two, and Ms. Robinette's subsequent behavior

23 caused by Battered Woman's Syndrome, V.S.R. was declared dependent as to Mr. Rolan

24 and Ms. Robinette in 2013.

25

26

27  [1] Plaintiffs make the allegations in this Complaint based upon personal knowledge as to
28  those matters in which they had personal involvement and upon information and belief as
    to all other matters.

8

31.     Prompted by the State's actions, Ms. Robinette took control of her life and changed her behavior and situation. Ms. Robinette ended her relationship with Mr. Rolan in 2013. DCS then returned V.S.R. to Ms. Robinette's care in September 2014.

32.     Since 2014, Ms. Robinette and Mr. Neeley have been involved in a romantic relationship. Ms. Robinette and Mr. Neeley are the natural parents of A.L.N. (DOB 4/14/2015) and A.R.N. (DOB 6/13/2016). There are no incidents of domestic violence between Ms. Robinette and Mr. Neeley.

## II.    V.S.R.'S REMOVAL FROM THE CARE OF MS. ROBINETTE AND MR. NEELEY WAS WITHOUT PROBABLE CAUSE

33.     On July 22, 2016, Apache Junction Police Department (AJPD) received a request for a wellness check for Ms. Robinette. The request came from Ms. Robinette's mother, Robin Robinette (Robin). During the call to AJPD, Robin alleged that Mr. Neeley was abusing Ms. Robinette.

34.     At or about 11:30 a.m. on July 22, 2016, Officer Gearhart of the AJPD arrived at the residence shared by Mr. Neeley, Ms. Robinette, V.S.R., A.L.N., and A.R.N. Officer Gearhart spoke with Ms. Robinette. Ms. Robinette told Officer Gearhart that she was fine, and that her mother liked to "cause problems" because she did not approve of Mr. Neeley. Officer Gearhart observed no bruises on Ms. Robinette and did not speak with any other members of the household as they were all napping.

35.     Officer Gearhart left the residence. He then called Robin and reported to her that Ms. Robinette was fine.

36.     Robin asked if Officer Gearhart had seen V.S.R. After Officer Gearhart said that he had not, Robin changed her story to say the wellness check was for the oldest child, V.S.R., and claimed that V.S.R. had been seen with bruising.

37.     Officer Gearhart returned to Ms. Robinette's residence and asked to see V.S.R. Ms. Robinette brought V.S.R. to the officer and he noted several bruises on V.S.R. in various stages of healing. Officer Gearhart asked how the bruises occurred, and Ms. Robinette stated that A.L.N. (age 1) had hit V.S.R. with a toy bus, causing the bruising.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

Mills + Woods Law, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

1   Ms. Robinette also related incidents of V.S.R. falling off of a toy kitchenette and
2   roughhousing with her sisters as reasons for some of the other bruises.

3       38.     Officer Gearhart left the residence and contacted DCS. He then turned the
4   case over to Detective Halperin, of AJPD. Without obtaining a warrant, Detective Halperin
5   seized V.S.R. from her parents and transported her to Phoenix Children's Hospital for a
6   forensic exam. Detective Halperin did not permit V.S.R.'s parents to be with her during
7   the forensic exam. During the forensic exam, V.S.R. told the treating nurse, multiple times,
8   that her sister A.L.N. had given her the bruises. V.S.R. also stated that Ms. Robinette and
9   Mr. Neeley disciplined her by making her sit in a corner. There were no concerns about
10  V.S.R.'s behavior during the interview, and she did not act traumatized or scared of Ms.
11  Robinette or Mr. Neeley during the interview.

12      39.     The child abuse nurse at Phoenix Children's Hospital examined V.S.R. and
13  speculated that the bruise on her ear may not have been from normal sibling play as both
14  Ms. Robinette and V.S.R. had stated. The nurse admitted in her paperwork that she did not
15  have a full medical history, and there is no indication that she knew about V.S.R.'s
16  propensity to bruise easily.

17      40.     Sometime during the day of July 22, 2016, Robin and Bonnie Soto, Ms.
18  Robinette's sister, signed written statements alleging that Ms. Robinette and Mr. Neeley
19  were abusing V.S.R. There is no indication that Officer Halperin was made aware of these
20  written statements until he was given a copy of the statements on the morning of July 26,
21  2016.

22      41.     On July 22, 2016, Officer Halperin opened an investigation into possible
23  child abuse against Ms. Robinette and Mr. Neeley.

24      42.     Per a DCS press release in 2018, removal decisions do not and never have
25  "rested solely with the child welfare investigator." "All child removals have always, and
26  still require, a thorough case review and approval by the investigator's supervisor prior to
27  DCS making a removal decision." *See* DCS website, https://dcs.az.gov/news/november-
28  29-2018-statement-dcs-regarding-removal-children (last visited October 31, 2019).

10

43. On July 22, 2016, at or about 5:01 p.m., Barbara Bennett and/or her supervisor Laura McGlynn seized V.S.R. by issuing a Temporary Custody Notice (TCN). Ms. Bennett and/or Ms. McGlynn placed V.S.R. in the care of her father, Mr. Rolan.

44. Ms. Bennett notified Ms. Robinette and Mr. Neeley that DCS was investigating them based on the allegations for possibly abusing and/or neglecting A.L.N. and A.R.N. Ms. Bennett and/or Ms. McGlynn however, left A.L.N. and A.R.N. in the care and control of Ms. Robinette and Mr. Neeley for another six (6) days, until July 27, 2016. During that time, there was not sufficient concern for A.L.N.'s and A.R.N.'s safety to remove the children from Ms. Robinette's and Mr. Neeley's care.

**III.   A.L.N.'S AND A.R.N.'S REMOVAL FROM THE CARE OF MS. ROBINETTE AND MR. NEELEY WAS WITHOUT PROBABLE CAUSE**

45. On July 26, 2016, at or about 12:30 p.m., DCS held a Team Decision Making (TDM) meeting to decide how to proceed for all three children. At the TDM, Ms. Bennett and/or Ms. McGlynn decided to leave V.S.R. in the care of Mr. Rolan and leave A.L.N. and A.R.N. in the care of Mr. Neeley. At Ms. Bennett's request, Ms. Robinette moved out of the apartment that she shared with Mr. Neeley.

46. The same day as the TDM, on July 26, 2016, at or about 4:30 p.m., Detective Halperin transported Mr. Neeley and Ms. Robinette to the AJPD police station and interrogated them regarding the allegations of child abuse. In response to Detective Halperin's request, both parents agreed to take a lie detector test in order to support their declaration that they did not abuse any of their children. Detective Halpin, however, decided not to administer a lie detector test. Mr. Neeley and Ms. Robinette were both home within a few short hours.

47. On July 27, 2016, at or about 4:06 p.m., the day after both Ms. Robinette and Mr. Neeley were released from AJPD custody, Ms. Bennett and/or Ms. McGlynn issued a TCN, seizing A.L.N. and A.R.N. from the custody of their parents. The only reason given for the TCN was that "caregiver's explanation of injuries is inconsistent with condition."

MILLS + WOODS LAW, PLLC<br>5055 North 12th Street, Suite 101<br>Phoenix, AZ 85014<br>480.999.4556

1  Critically, there were no allegations that either A.L.N. or A.R.N. actually had any injuries
2  at the time they were seized.

3      48.    Ms. Bennett and/or Ms. McGlynn did not follow clearly established federal
4  law that requires that, absent exigent circumstances, a government actor must seek a
5  warrant prior to the seizure of children from their parents. Instead, Ms. Bennett and/or Ms.
6  McGlynn followed only the then current DCS official policy of issuing a TCN without any
7  court authorization or oversight.

8      49.    After Ms. Bennett and/or Ms. McGlynn seized A.L.N. and A.R.N., Ms.
9  Bennett and/or Ms. McGlynn placed the children with their family members. After a couple
10  of day of being with their family members, Ms. Bennett and/or Ms. McGlynn then moved
11  the children to the care of foster parents.

12      50.    On July 29, 2016, at the request of Ms. Bennett and/or Ms. McGlynn, an
13  Assistant Attorney General representing DCS filed a dependency petition, seeking a
14  finding that all three children were dependent as to both Ms. Robinette and Mr. Neeley. As
15  to all three children, the State alleged that Ms. Robinette and Mr. Neeley had abused and/or
16  neglected the children.

17      51.    Based on the allegations in the dependency petition, on August 3, 2016, the
18  court granted temporary custody of all three children to DCS.

19      52.    The AJPD criminal investigation of child abuse was never received by the
20  Pinal County Attorney's Office for charging. The AJPD criminal investigation was
21  officially closed, with no charges ever being brought, on or about October 7, 2016.

22  **IV.   THE LACK OF VISITATION WITH THE CHILDREN DAMAGED THE**
23       **FAMILIAL RELATIONSHIP**

24      53.    Ms. Robinette and Mr. Neeley received one visit with A.L.N. and A.R.N. in
25  the middle of August 2016. Ms. Bennett unlawfully prevented Ms. Robinette and Mr.
26  Neeley from visiting with A.L.N. and A.R.N. from the middle of August 2016 until
27  October 25, 2016.

28

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

54.     On October 20, 2016, Ms. Bennett falsely reported to the court that she was "not required" to provide Ms. Robinette with visitation with V.S.R. because V.S.R. was placed with Mr. Rolan. Ms. Bennett also falsely reported to the court that "referrals were in place to assist [Ms. Robinette] with visits with all children." At the time of her representation to the court, DCS had been granted temporary custody of V.S.R., and Ms. Bennett did not allow any contact between Ms. Robinette and V.S.R.

55.     Ms. Robinette's parental rights had not been severed, so Ms. Robinette still had the constitutional right to have her custody, care, and control of V.S.R. infringed upon by the State by the least restrictive means possible.

56.     On October 20, 2016, Ms. Bennett falsely reported to the court that Ms. Robinette and Mr. Neeley were still under criminal investigation regarding child abuse and that the AJPD was currently "collecting and processing evidence." This report to the court was contradicted by the Foster Care Review Board notice that the criminal investigation had been closed.

57.     On October 20, 2016, Ms. Bennett failed to provide a written case plan to the Foster Care Review Board as required by Arizona law.

58.     Although the items were in her possession, Ms. Bennett failed to disclose to either Ms. Robinette or Mr. Neeley or the court, case reports, home assessments of relatives considered for placement, and court reports that were favorable to Ms. Robinette and Mr. Neeley prior to the November 3, 2016 dependency hearing. Among other things, the in-home assessment that Ms. Bennett failed to turn over quoted Mr. Rolan's brother "that [V.S.R.] will start biting and hitting herself when she goes into a tantrum," offering a possible explanation for V.S.R.'s bruises. Due to Ms. Bennett's failure to properly disclose evidence that was favorable to Ms. Robinette and Mr. Neeley, the court did not have this information during the adjudication hearing. The court adjudicated A.L.N. and A.R.N.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

13

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

1   dependent as to Ms. Robinette and Mr. Neeley. The court also adjudicated V.S.R.

2   dependent as to Ms. Robinette.2

3        59.    On November 15, 2016, the new DCS case worker, Ms. Ashmore and her

4   supervisor, Phyllis Mitchum, removed V.S.R. from Mr. Rolan's care because he failed drug

5   tests, he was unresponsive to DCS for several months, and they had received reports of

6   V.S.R. acting out in sexual ways while in Mr. Rolan's care. Although Ms. Ashmore knew

7   about all of these problems long before the November 3, 2016 dependency hearing, she

8   failed to disclose these concerns to the court or to Ms. Robinette or Mr. Neeley.

9        60.    Ms. Bennett and/or Ms. Ashmore failed to provide any reunification services

10  to either Ms. Robinette or Mr. Neeley until on or about January 24, 2017, when a parent

11  aide was assigned to Ms. Robinette. This was not until about six (6) months after the

12  children were seized by the State. Eager to have their children returned home, Ms.

13  Robinette and Mr. Neeley began attending community parenting classes. Mr. Neeley also

14  attended Anger Management classes at his own cost because DCS had not yet provided

15  them.

16       61.    Ms. Robinette and Mr. Neeley also continuously asked for visitation with

17  V.S.R. Ms. Bennett did not arrange for Ms. Robinette to have a single visit with V.S.R.

18  during her nearly four (4) months as case manager. Ms. Ashmore did not arrange for Ms.

19  Robinette's first visit with V.S.R. until February 9, 2017, nearly seven (7) months after the

20  State had seized V.S.R., and three (3) months after Ms. Ashmore became the case manager.

21       62.    On December 13, 2016, Ms. Ashmore and Ms. Mitchum, submitted to the

22  court a report that falsely stated that Mr. Neeley and Ms. Robinette are "currently being

23  investigated by AJPD for child abuse. . . This is an active criminal investigation." Ms.

24  Ashmore and Ms. Mitchum submitted the report containing this representation even though

25

26

27   2 Mr. Rolan submitted to the dependency for V.S.R. The court noted on November 17,

28  2016 that it erroneously left V.S.R. off of the original dependency minute entry and
    corrected this error.

they knew, or reasonably should have known, that the police investigation had been closed for months.

63.     On December 13, 2016, Ms. Ashmore and Ms. Mitchum submitted to the court a report that stated that "[V.S.R.] continues to make disclosures which are currently under a criminal investigation." At the time that Ms. Ashmore and Ms. Mitchum submitted that report, there was no record of any allegations that V.S.R. had made and no record of an open police investigation.

64.     On December 13, 2016, Ms. Ashmore and Ms. Mitchum submitted to the court a report that stated that Ms. Ashmore and/or Ms. Mitchum were "pleased with Brittany Robinette's and Austin Neeley's engagement in services" but failed to include in that report information that Ms. Robinette and Mr. Neeley had obtained services at their own cost because no services were being provided by the department.

65.     On January 24, 2017, about five (5) months after the children were seized by the State, Ms. Ashmore assigned the first Parent Aide to Ms. Robinette and Mr. Neeley. Ms. Robinette and Mr. Neeley received their first parent aide visit with A.L.N. and A.R.N. on February 1, 2017. At this time, Ms. Robinette still had not received any visits with V.S.R.

## V.     PROBABLE CAUSE WAS SORELY LACKING IN THE REMOVAL OF V.S.R. AND THE REMOVAL OF A.L.N. AND A.R.N.

66.     If DCS finds that probable cause exists to support an allegation of child abuse or neglect, then DCS deems that allegation "substantiated."   If an allegation is substantiated, then, under Arizona law, DCS is lawfully compelled to place the person who committed the abuse or neglect on a DCS registry.

67.     DCS never placed or attempted to place Ms. Robinette on the DCS registry.

68.     DCS attempted to place Mr. Neeley on the registry on October 19, 2016, stating to Mr. Neeley, "DCS has reason to believe you abused [V.S.R.]."

69.     Mr. Neeley contested DCS's attempt to place him on the registry, arguing that there was no probable cause that he abused V.S.R.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

70.     On January 25, 2017, DCS sent Mr. Neeley a letter stating that it had not substantiated the allegations that he had abused V.S.R.

71.     Despite the fact that DCS had found there was no probable cause to support a finding of abuse, Ms. Ashmore did not return any of the children to Mr. Neeley's and Ms. Robinette's care.   A.L.N. and A.R.N. remained outside of their parents' care for another almost eight (8) months, and V.S.R. remained outside of Ms. Robinette's care for roughly another two (2) years and eight (8) months, i.e., another thirty-two (32) months.

## VI.   THE RETURN OF A.L.N. AND A.R.N. TO THEIR PARENTS WAS UNREASONABLY DELAYED

72.     On February 1, 2017, DCS service provider/therapist Andrea Thomas called the DCS hotline alleging that V.S.R. had made an allegation of abuse against Mr. Neeley. This alleged allegation had been made on January 26, 2017, just one day after DCS acknowledged that there was not probable cause to support its previous allegations that Mr. Neeley had abused V.S.R. Even though she is a mandatory reporter, Ms. Thomas failed to report this allegation of abuse for a full six (6) days after the time she alleges that V.S.R. made this allegation.

73.     On February 9, 2017, V.S.R. received her first visitation with Ms. Robinette, almost 198 days since she had been seized by the State.

74.     On February 13, 2017, Ms. Ashmore either solicited or received letters from V.S.R.'s therapists from the Easter Seals Blake Foundation, Joanna Sundstrom and Sarah Qunitana. These letters stated that V.S.R. made disclosures sometime between July 22, 2016 and November 15, 2016 to her father, Mr. Rolan, and paternal grandmother. In these alleged disclosures, V.S.R. claimed that Mr. Neeley had performed "sexual acts" on her. This is the first time that this information was reported to the court. There were no calls to the hotline from a mandatory reporter. These allegations were not raised or detailed in any of the previous court reports. The letters further recommended that all three children not see their parents.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

75.    Ms. Ashmore and/or Ms. Mitchum filed the above letters with the court on February 23, 2017. Ms. Ashmore and/or Ms. Mitchum requested that all contact between Mr. Neeley and V.S.R. be stopped until Mr. Neeley passed a psychosexual analysis.

76.    On February 26, 2017, Mr. Neeley passed a polygraph test, showing no indications of sexual abuse for V.S.R.

77.    Mr. Neeley filed a motion requesting to interview Ms. Sundstrom and Ms. Qunitana regarding the new allegations. The State opposed this motion, noting that the only motions currently before the court was the request to return A.L.N. and A.R.N. to Mr. Neeley and Ms. Robinette. The State asserted that its allegations that Mr. Neeley had abused V.S.R. "has no bearing or relevance to" whether A.L.N. or A.R.N. should be returned to Mr. Neeley or Ms. Robinette. The State further stated that "Mr. Neeley's focus on [V.S.R.'s] allegations is not relevant to his case plan of family reunification with [A.L.N.] and [A.R.N.]." The court denied Mr. Neeley's request to interview Ms. Sundstrom and Ms. Qunitana.

78.    Even though DCS had admitted that there was not probable cause to show that Mr. Neeley had abused V.S.R., and therefore neither he nor Ms. Robinette could have failed to protect any of the children from abuse, and even though the State had stated that any supposed allegations of sexual abuse at the hands of Mr. Neeley was not "relevant" to whether A.L.N. or A.R.N. should be returned home, Ms. Ashmore refused to return A.L.N. and A.R.N. to Mr. Neeley's or Ms. Robinette's care.

79.    On May 9, 2017, Ms. Ashmore finally conceded that she would agree to return A.L.N. and A.R.N. to Mr. Neeley's and Ms. Robinette's care if Mr. Neeley would pass a psychosexual analysis to show that there was no risk of sexual abuse. On that date, the court ordered Mr. Neeley and Ms. Robinette to undergo a psychosexual analysis and further ordered that visitation with A.L.N. and A.R.N. would increase if the psychosexual analyses were not problematic.

80.    Ms. Robinette's psychosexual analysis on May 24, 2017 showed no concerns with sexual abuse. Mr. Neeley's psychosexual analysis on July 11, 2017 also showed no

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

concerns with sexual abuse. Since DCS only requested the parents complete the psychosexual analysis in regard to sexual abuse, Ms. Robinette and Mr. Neeley did not complete the physical abuse portion of the psychosexual analysis.

81.     Mr. Rolan was also ordered to undergo a psychosexual analysis. His psychosexual analysis diagnosed him with "child sexual abuse" and his polygraph examination showed there was a "significant reaction" response in regards to sexual abuse for V.S.R. A "significant reaction" means the threshold was met for the category of deception.

82.     On July 31, 2017, Ms. Ashmore and Ms. Mitchum falsely reported to the court that there was still an active investigation of child abuse by AJPD. Ms. Ashmore and Ms. Mitchum further falsely reported to the court that Ms. Robinette and Mr. Neeley posed a risk to V.S.R. because "all three parents completed a psychosexual evaluation with Dr. Pondeil and Dr. Leclerc in which Dr. Pondeil and Dr. Leclerc reported severe concerns for all three parents in regard to physical and sexual abuse." At the time Ms. Ashmore and Ms. Mitchum made this false report, they knew, or reasonably should have known, that there were no concerns expressed by either Dr. Pondeil or Dr. Leclerc as to sexual abuse for either Ms. Robinette or Mr. Neeley. In the report to the court, Ms. Ashmore and Ms. Mitchum also criticized Ms. Robinette and Mr. Neeley for not completing the physical abuse portion of the psychosexual analysis, even though that evaluation was outside of the scope of the agreement Ms. Robinette and Mr. Neeley had made with DCS.

83.     About or around August 2017, Ms. Ashmore told Ms. Robinette, Mr. Neeley, and/or Ms. Dale, who is Mr. Neeley's mother, that the court and the attorneys were not in charge of whether the children returned home. Rather, Ms. Ashmore asserted, whether the children returned home was solely her decision. She also told Ms. Robinette and/or Mr. Neeley that if Ms. Robinette and Mr. Neeley had not hired private counsel, their children would have already been returned home.

84.     Even though Ms. Ashmore earlier stated that she would agree to return A.L.N. and A.R.N. to their parent's care upon favorable psychosexual analyses, when the

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

results were indeed favorable to Ms. Robinette and Mr. Neeley, Ms. Ashmore reneged on her agreement. She did not institute proceedings to return the Ms. Robinette's and Mr. Neeley's children to them, but instead requested that their children continue to be kept from their parents.

85.     On or about August 9, 2017, the court ordered A.L.N. and A.R.N. to be returned to Ms. Robinette and Mr. Neeley "within three to four weeks," over Ms. Ashmore's objection. Ms. Ashmore arranged for A.L.N. and A.R.N. to return home on September 6, 2017.

86.     The court dismissed the dependency petition DCS had filed regarding A.L.N. and A.R.N. on November 8, 2017.

## VII.  MS. ROBINETTE'S AND MR. NEELEY'S (LACK OF) VISITS WITH V.S.R.

87.     On or about March 6, 2017, V.S.R.'s therapist Sarah Quinton recommended that V.S.R. increase to two therapy sessions per week due to "increased dysregulation."

88.     On or about April 3, 2017, the police closed the investigation into V.S.R.'s February 1, 2017 allegations.

89.     In May 2017, V.S.R. began stating to Ms. Quinton that she did not want to see Mr. Rolan and began to refuse to talk with her therapist after her visits with Mr. Rolan. V.S.R. also began acting out by throwing 45-minute tantrums, slapping, and being very violent.

90.     As previously noted, in or around May 2017, Ms. Robinette, Mr. Neeley, and Mr. Rolan were all ordered to undergo a psychosexual analysis to address any concerns of sexual abuse for V.S.R.

91.     On or about May 26, 2017, Ms. Ashmore, Ms. Mitchum, and Ms. Thomas requested an emergency order suspending visitation until V.S.R. can "return to baseline" as her behavior was escalating. The court granted this motion on June 7, 2017, but also ordered that the visits with Ms. Robinette begin again by July 7, 2017, if possible.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

92.     On June 3, 2017, before the court granted the motion to suspend visitation, Ms. Robinette's polygraph showed no significant reactions to sexual abuse on V.S.R. The State did not report this positive result to the court until July 11, 2017.

93.     The psychosexual analysis and polygraph tests for Ms. Robinette and Mr. Neeley both showed no concern of sexual abuse of V.S.R.

94.     Mr. Rolan's polygraph test, completed on June 25, 2017, however, showed a significant reaction in regard to sexual abuse of V.S.R.

95.     On July 11, 2017, January 12, 2018, and April 6, 2018, Ms. Ashmore and Ms. Mitchum falsely represented to the court that there was, on those dates, "still an active investigation" as to abuse of V.S.R. even though Ms. Ashmore and Ms. Mitchum knew, or reasonably should have known, that this representation was false.

96.     In the case plan of October 20, 2017, Ms. Ashmore again fraudulently represented that there was "still an active investigation" as to the allegations of Ms. Robinette and/or Mr. Neeley abusing V.S.R.

97.     Even though A.L.N. and A.R.N. had been returned to Ms. Robinette and Mr. Neeley four months earlier because of a clean psychosexual analysis, on or about January 12, 2018, Ms. Ashmore and Ms. Mitchum stated to the court that V.S.R. had not been returned to Ms. Robinette's care because Ms. Robinette had failed to engage in services that the psychosexual analysis recommended. Ms. Ashmore and Ms. Mitchum did not explain why the psychosexual analysis was sufficient to return A.L.N. and A.R.N., but not to return V.S.R.

98.     On or about February 21, 2018, the court again ordered that visitation resume between Ms. Robinette and V.S.R. on a weekly basis. However, in contempt of the court's order, Ms. Ashmore did not take steps to resume visitation and, Ms. Robinette's visits with V.S.R. did not begin again in any significant way until June 11, 2018, almost four (4) months following the court's order.

99.     V.S.R.'s therapy notes for February observed that V.S.R. would get upset when she saw a picture of her mother and sisters all together.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

100.   Ms. Ashmore scheduled one visit for one hour between Mr. Robinette and V.S.R. on March 12, 2018. On March 21, 2018, Ms. Robinette emailed Ms. Ashmore asking when her second visit would be scheduled and stated that she thought the last visit went very well.

101.   Instead of scheduling another visit, on March 28, 2018, Ms. Ashmore once again requested that the court order that Ms. Robinette's and V.S.R.'s therapeutic visitation be stopped. The court denied this request and again ordered that V.S.R. have ongoing contact with Ms. Robinette by therapeutic visitation. Contrary to the court's order, Ms. Ashmore again did not facilitate therapeutic visitation with Ms. Robinette until much later, on June 11, 2018.

102.   Without seeing her mother for so long, V.S.R.'s behavior began to escalate so dramatically that, on or about April 27, 2018, V.S.R.'s foster care family called the police to address V.S.R.'s behavior. V.S.R. was terrified that the police were there to shoot her.

103.   By May 2018, V.S.R.'s visits with her sisters had been suspended and V.S.R. believed that she was not seeing her sisters because they were hurt or dead. Despite the trauma that V.S.R. was experiencing from not seeing her sisters, Ms. Ashmore did not begin sibling visits again until September 8, 2018.  Ms. Ashmore only resumed sibling visits after the stress of not seeing Ms. Robinette and her siblings caused V.S.R. to be hospitalized for about a week, and even then, Ms. Ashmore only resumed sibling visits in an attempt to "demonstrate that they were indeed still alive."

104.   On May 1, 2018, the court ordered a file review and again ordered that visits between V.S.R. and Ms. Robinette resume by May 7, 2018. Ms. Ashmore again ignored the court's order and did not begin visitation until June 11, 2018.

105.   Ms. Thomas's therapy notes for May 2018 note that V.S.R. is "avoidant" about discussing Ms. Robinette because, even though V.S.R. was only 5 years old and had been diagnosed with ADHD, she gets distracted when Ms. Thomas is reading Ms.

21

1    Robinette's letters and offers "no explanation" as to why she is doing this. Ms. Thomas

2    never explains how this behavior is not appropriate given V.S.R.'s age or diagnosis.

3        106.    Ms. Robinette had five (5) visits with V.S.R. between June 11, 2018 and July

4    26, 2018. On July 26, 2018, Ms. Ashmore and Ms. Mitchum requested that the court

5    suspend visitation because Ms. Robinette denied to the therapist that Mr. Neeley had

6    abused V.S.R. and avoided discussing Mr. Neeley with V.S.R.  The therapist was also

7    concerned because V.S.R. did not engage in a "feelings game" that the therapist had

8    suggested and opined that she was not emotionally bonded with Ms. Robinette. The

9    therapist also noted that Ms. Robinette did not bring a snack to the visit. It was never noted

10   that Ms. Robinette was merely told twice that avoiding the discussion about Mr. Neeley

11   was "inappropriate," but was never given advice on what she could say about him. Instead,

12   Ms. Ashmore and Ms. Mitchum simply requested to cancel visits and requested that Ms.

13   Robinette be required to do months more of therapy before she could resume contact with

14   V.S.R.

15       107.    The day after Ms. Ashmore requested that the court suspend visits between

16   V.S.R. and Ms. Robinette, Ms. Ashmore emailed Ms. Robinette and stated to her that visits

17   were suspended by court order until the August 8, 2018 hearing. Ms. Robinette was never

18   given a copy of this alleged order and it is unknown if the order actually exists.

19       108.    On or about August 8, 2018, in a hearing regarding the DCS's motion to

20   suspend visitation, the court ordered that visits between Ms. Robinette and V.S.R. continue

21   and that the visits be supervised by Dr. Adler-Tapia.  The court reiterated this order on

22   August 14, 2018. Despite the court's order, due to the action of the State, visits between

23   Ms. Robinette and V.S.R. did not resume until July 12, 2019 – nearly a year later.

24       109.    On or about August 22, 2018, Ms. Thomas opined in a meeting that her belief

25   was that restricting visits with Ms. Robinette was causing V.S.R. to behave much better.

26       110.    Despite Ms. Thomas' non-expert opinion, the next day, on August 23, 2018,

27   V.S.R. was brought to Phoenix Children's Hospital because of V.S.R.'s self-harming

28   behavior and her violent behavior towards others. Contrary to Ms. Thomas' representation

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

during the August 22nd meeting, V.S.R.'s foster parents noted that V.S.R.'s behavior had been escalating for the past 6 to 7 weeks. After observation, V.S.R. was admitted to the hospital on August 24, 2018. She remained hospitalized until September 5, 2018.

111.   During her hospital stay, V.S.R. was diagnosed with Mood Disorder.

112.   While V.S.R. was in the hospital, the court issued another minute entry on or about August 29, 2018, in which it appointed Dr. Adler-Tapia as V.S.R.'s treating psychologist.

113.   On or about September 7, 2018, a court-ordered records review was completed by Dr. Mary Oakley. Dr. Oakley's report noted that V.S.R.'s problematic behavior was a result of family separation/alienation and that "she needs permanency and stability as soon as possible." Dr. Oakley was critical of the lack of contact between V.S.R. and her family and expressed "concern" that the advice of DCS's mental health providers was that V.S.R. have no contact with Ms. Robinette. Dr. Oakley recommended V.S.R. be placed in family placement as soon as possible.

114.   Notably, neither the State, DCS, nor Ms. Ashmore provided Dr. Oakley's report to the court.

115.   Ms. Ashmore and Ms. Thomas knew that V.S.R. believed that A.L.N., A.R.N., and Ms. Robinette were dead and that was the reason she was unable to visit with them. Ms. Ashmore finally allowed V.S.R. to meet with A.L.N. and A.R.N on September 8, 2018 to "demonstrate that they were alive." Ms. Ashmore and Ms. Thomas, however, continued to refuse to allow V.S.R. to visit with Ms. Robinette even though they knew that V.S.R. believed that Ms. Robinette was dead, and despite knowing that Dr. Oakley opined that a lack of regular contact with her mother was contributing to V.S.R. lack of progress.

116.   On or about October 2, 2018, Assistant Attorney General Tracey Henrick, as counsel for DCS, responded to the court's inquiry of when visitation would begin again between V.S.R. and Ms. Robinette by stating "[i]t is [Ms. Ashmore's] recollection that the court granted DCS's motion to suspend the therapeutic visitation," despite the fact that the court's actual orders were to the contrary.

Mills+Woods Law, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

23

117. On or about October 31, 2018, the court ordered that visitation between Ms. Robinette and V.S.R. resume by November 5, 2018. The court also "allow[ed]" DCS to reassign Ms. Ashmore off of V.S.R.'s case.

118. Ms. Ashmore was replaced by Stephanie Cooper as case manager. Ms. Cooper and Dr. De Soler later noted that there was a "clear-cut correlation" between V.S.R.'s psychiatric hospitalization and the decision to restrict V.S.R.'s visits with Ms. Robinette, A.L.N., and A.R.N. in July 2018.

119. Ms. Ashmore, Ms. Cooper, Ms. Thomas, and Dr. De Soler understood that V.S.R. had an "intense fear that something bad happened to her mother and or her sisters," and ending the therapeutic visitation "intensified [V.S.R.'s] behaviors and contributed to the psychiatric hospitalization in August 2018." Despite acknowledging this link as early as February 15, 2019, Ms. Cooper continued to advocate for restricting visits between Ms. Robinette and V.S.R. for another five (5) months, until visits finally resumed on or about July 12, 2019.

120. In fact, although the case plan was never changed to adoption, the foster parents, a lesbian married couple, badly wanted to adopt V.S.R.

121. In the fall of 2018, the court ordered that Dr. Heather De Soler was to replace Ms. Thomas as V.S.R.'s therapist. The court also ordered that V.S.R.'s individual therapy take place outside of the presence of her foster mother. Furthermore, to avoid influencing Dr. De Soler against Ms. Robinette and Mr. Neeley, the court ordered that there be no contact between Dr. De Soler and Ms. Ashmore or V.S.R.'s foster mother.

122. Despite the court's order, both Ms. Ashmore and V.S.R.'s foster mother had contact with Dr. De Soler. Although Ms. Cooper was aware of the court's order, she took no action to stop the illicit contact between Dr. De Soler and the foster mother, spoke approvingly of those contacts, and failed to make the court aware of the violation of its orders.

123. In or around October 2018, Ms. Robinette's therapist contacted Dr. De Soler and noted that Ms. Robinette was ready to respond to V.S.R. correctly when V.S.R. brought

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

1  up concerns about Mr. Neeley, and that there were no concerns about Ms. Robinette
2  starting visits again.

3    124.   Also, in or around October 2018, the court ordered that V.S.R. be placed with
4  Mr. Neeley's mother, Shauna Dale, a placement that Ms. Robinette had requested since the
5  first day of DCS's interference with her family, but which Ms. Ashmore had denied.

6    125.   On or about November 19, 2018, the court again ordered that therapeutic
7  visitation between Ms. Robinette and V.S.R. resume as soon as possible.

8    126.   On December 4, 2018, Ms. Cooper and her supervisor, Jeannine Janowitz,
9  told the court that DCS had requested visitation but was following Dr. De Soler's orders
10 not to allow contact with Ms. Robinette. Ms. Cooper and Ms. Janowitz made this
11 representation to the court even though they knew, or reasonably should have known, that
12 it was false. Dr. De Soler never issued any such order. Dr. De Soler had only suggested
13 that V.S.R. not engage in family therapy with Ms. Robinette. The therapist had not ordered
14 that therapeutic visitation not occur.  Dr. De Soler, in fact, believed that the therapeutic
15 visitation was being scheduled by Ms. Cooper.

16   127.   Based on the false representation by Ms. Cooper and Ms. Janowitz that Dr.
17 De Soler had recommended that Ms. Robinette and V.S.R. not have contact, the court
18 repeatedly began ordering that V.S.R.'s visitation with Ms. Robinette begin as soon as the
19 therapist approved. The court made such orders on December 10 and 19, 2018, and again
20 on January 16, 2019.

21   128.   In or around January 2019, Dr. De Soler discussed removing herself as
22 V.S.R.'s therapist because "progress has been close to obsolete, and extremely slow." Dr.
23 De Soler could not get V.S.R. to engage for any significant amount of time, although she
24 admitted V.S.R. did better when Ms. Dale was present. Notably, Dr. De Soler was unable
25 to begin trauma therapy because V.S.R. had made no disclosures of abuse. Ms. Cooper
26 requested that Dr. De Soler continue as V.S.R.'s therapist despite the lack of progress,
27 requested that Dr. De Soler request an extension of therapy, and "stated several times that
28 [she does] not wish to appoint a different therapist."

129.   On or about February 12, 2019, Ms. Cooper stated to Ms. Robinette that she had submitted the referral for Ms. Robinette to have visitation with V.S.R. Two days later, however, Ms. Cooper reversed course and stated that she would not request the visitation because it was her belief that V.S.R. did not have the coping skills to be successful in family therapy with Ms. Robinette. Ms. Cooper and Dr. De Soler had decided that V.S.R. lacked coping skills even though Dr. De Soler had not yet discussed Ms. Robinette with V.S.R. in therapy.

130.   On or about February 15, 2019, at a Child and Family Team ("CFT") meeting, Dr. De Soler was surprised to learn that Ms. Robinette and V.S.R. were not having therapeutic visitation. Dr. De Soler believed that the therapeutic visitation had been occurring and was only waiting for the family therapy to begin. Dr. De Soler agreed to start therapeutic visitations between Ms. Robinette and V.S.R. within a month as long as V.S.R. began deescalating at school and was able to be calm and focused for at least 10 to 15 minutes. Up to this point, V.S.R., who was diagnosed with ADHD, had only been able to sit still and engage for about one minute at a time. Dr. De Soler did not state why she was creating these restrictions, nor why she thought V.S.R. would suddenly reverse course and be able to sit for 10 to 15 minutes at a time. On this same date, Ms. Robinette's therapist again verified that Ms. Robinette was therapeutically ready to deal with V.S.R. in an appropriate way.

131.   After the CFT meeting, Ms. Cooper contacted Dr. De. Soler to "clarify" Dr. De Soler's position. During that "clarification," Dr. De Soler revoked her agreement to start therapeutic visitation and counseling because, even though DCS had admitted that there was not probable cause to determine that Mr. Neeley had abused V.S.R., and even though Ms. Robinette's therapist twice verified that Ms. Robinette was trained on the appropriate way to interact with V.S.R. regarding Mr. Neeley, Dr. De Soler "learned" that Ms. Robinette did not believe the abuse allegation made against Mr. Neeley.

132.   During this time, Dr. De Soler continued to "counsel" with V.S.R. and recommended that V.S.R. not receive visits from Ms. Robinette even though Dr. De Soler

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

was not working on coping skills, grounding stabilization, or EMDR, i.e., Eye Movement Desensitization and Reprocessing[3], with V.S.R.  Dr. De Soler also continued to refuse to discuss Ms. Robinette with V.S.R.

133.   Four days after Dr. De Soler "clarified" her position to Ms. Cooper, on or about February 19, 2019, Ms. Cooper falsely represented to the court that the investigation regarding abuse with Mr. Neeley was an "active investigation."

134.   On or about February 19, 2019, Ms. Cooper also falsely represented to the court that "[V.S.R.] has spent minimal time with her parents due to troubling symptoms of trauma displayed before and after visits have occurred. More recently, [V.S.R.] was hospitalized at Phoenix Children's Hospital for two weeks in August 2018 following a sequence of therapeutic visits with her parents." Ms. Cooper strongly implied to the court that V.S.R.'s emotional issues stemmed from seeing her Ms. Robinette even though Dr. De Soler's notes from February 15, 2019 state that Ms. Cooper understood that the emotional problems stemmed from not seeing her family.

135.   Dr. De Soler's notes stated that Ms. Cooper reported to Dr. De Soler that "[V.S.R.] was freaking out because she wasn't seeing her mom during that time with her sisters." The doctor's notes further state that "case manager Stephanie [Cooper] agrees there is a clear-cut correlation between TI sessions ending in July, a consequential ending to visits with her mother and her sister, in conjunction with stimulating [V.S.R.]'s intense fear that something bad happened to her mother or her sisters, and in turn this intensified [V.S.R.]'s behaviors and contributed to the psychiatric hospitalization in August 2018."

136.   V.S.R. was so traumatized by the family visits being cut off that she began to believe the worst had happened and Ms. Ashmore finally "allowed her to start meeting with her sisters again on September 8th to demonstrate that they were indeed still alive."

---

[3] Eye Movement Desensitization and Reprocessing (EMDR) therapy is an interactive psychotherapy technique used to relieve psychological stress. It is one treatment for trauma and post-traumatic stress disorder (PTSD). *See* https://www.healthline.com/health/emdr-therapy (last visited November 4, 2019).

1   The trauma caused to this child by stopping her visits with her family was well known to

2   and understood by Ms. Cooper, Ms. Ashmore, Dr. De Soler, and Dr. Thomas. Despite this

3   knowledge, Dr. De Soler, supported by Ms. Cooper, continued to recommend no contact

4   between V.S.R. and Ms. Robinette.

5          137.    On February 15, 2019, Ms. Cooper reported that both Ms. Dale and V.S.R.'s

6   daycare providers noted that her dysregulated behavior had ceased since she was placed in

7   Ms. Dale's care. Although Ms. Cooper noted that while V.S.R. was living with Ms. Dale

8   and having regular visits with her sisters, V.S.R. was happier than she had ever seen her,

9   both Ms. Cooper and Dr. De Soler speculated that the "only realistic possibility for [V.S.R.]

10  to exhibit no behavioral dysregulation or problems (at placement) would be that there are

11  no rules or structure placed upon her at [Ms. Dale's] house."

12         138.    On or about February 17, 2019, even though she had previously correlated

13  V.S.R.'s psychological hospitalization to Ms. Ashmore cutting off visits with Ms.

14  Robinette, A.L.N, and A.R.N., Dr. De Soler noted that if she personally did not begin to

15  observe V.S.R. showing improvements in her behavior and emotions, Dr. De Soler would

16  recommend placing V.S.R. in "a resident treatment program."

17         139.    On or about March 13, 2019, Dr. De Soler reversed course again and

18  recommended that V.S.R. begin family therapy "as soon as possible." Ms. Cooper refused

19  to give a timeline for when this visitation would begin and did not institute visitation for a

20  full four (4) months, despite the court's order that visitation begin as soon as it was

21  therapeutically recommended.

22         140.    In or around March 2019, Dr. De Soler noted that the failure to address Ms.

23  Robinette in therapy with V.S.R. stemmed directly from her. She noted that V.S.R. had

24  stated many times that she wanted to see her Ms. Robinette, but that Dr. De Soler

25  "redirected" her each time because Dr. De Soler did not feel that V.S.R. was "ready" to

26  discuss Ms. Robinette. Dr. De Soler accused Ms. Dale of lying because she did not believe

27  that V.S.R. could be doing so well in her care and because Ms. Dale stated that she saw the

28

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

1   incident that caused V.S.R.'s initial bruise and that it was not caused by abuse. Dr. De Soler

2   was also dismissive of Ms. Dale's concerns regarding V.S.R.'s behavior.

3       141.   On or about March 21, 2019 at Ms. Cooper's request, Dr. De Soler wrote a

4   letter to the court stating that V.S.R. was showing extreme fear of Ms. Dale and stating that

5   she did not want to live with Ms. Dale because she was "not eating nutritiously healthy

6   food there," Ms. Dale "treats the dogs poorly" and "us[es] inappropriate language in front

7   of [her]." Ms. Cooper and Dr. De Soler did not explain why a 6-year-old child would be so

8   concerned about eating nutritiously healthy food that she would want to leave a family

9   placement that had made V.S.R. so happy and allowed her to be more settled in therapy

10  visits.

11      142.   Around the same time, Ms. Cooper also began falsely noting that Ms. Dale

12  was requesting that V.S.R. be removed from her home. These notes were in conflict with

13  the emails Ms. Dale sent to Ms. Cooper in early April stating that she wanted V.S.R. to

14  remain in her home.

15      143.   On or about May 9, 2019, V.S.R. was removed from Ms. Dale's house and

16  moved to a second foster care placement.

17      144.   On or about May 20, 2019, Dr. De Soler recommended that V.S.R.'s

18  visitation with her sisters resume via telephone calls and potentially in person.

19      145.   On or about July 2, 2019, Ms. Robinette completed another psychological

20  exam. In the report, Dr. Lee Underwood stated, "there does not appear to be any

21  psychiatric, emotional, social, personality, cognitive or behavioral concern that would

22  serve as a barrier to her day to day functioning in the lives of all of her children, including

23  [V.S.R.]."

24      146.   In his report, Dr. Underwood was critical of the lack of visitation and the fact

25  that V.S.R. was still in DCS care. He noted: "Over the past several years, Ms. Robinette

26  seems to have complied with the mandates of DCS. However, she reported DCS had a

27  concern about the recommendation that came from [V.S.R.'s] therapist that she (Ms.

28  Robinette) could be more emotionally validating in her approach to [V.S.R.]. Since the

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

concern has been raised, [V.S.R.] has addressed the issue while in counseling with her behavioral health provider. As such, given the multiple areas of growth in Ms. Robinette's life including improving her emotional self and parenting skills, it seems peradventure to continue to hold her daughter in the custody of DCS for the aforementioned validation concern."

147.   On or about July 12, 2019, the court finally took control of the situation. The court ordered Ms. Robinette receive a visit with V.S.R., supervised by Ms. Cooper, on July 14, 19, 23 (or 24), and 28, 2019. The court also "encourage[ed] additional contact" during July 29-31, 2019. The court granted DCS the discretion to determine the level of supervision but noted that "the level of supervision shall steadily decrease with time." The court ordered that Ms. Robinette will receive a telephone visit with V.S.R. by the end of the day on July 11, 2019. The court also ordered that a CFT be scheduled by July 19, 2019 and that family therapy shall be incorporated into the new case plan. The court encouraged two family sessions to occur before July 31, 2019. Lastly, the court removed Dr. De Soler from the case and ordered a therapist for V.S.R., "if necessary."

148.   On or about July 13, 2019, V.S.R. began visitation with Ms. Robinette which Ms. Cooper supervised, as the court had ordered.

149.   After visits with Ms. Robinette resumed, Ms. Cooper reported that V.S.R. was doing "remarkably well."

150.   On August 1, 2019, the Court ordered that family therapy occur twice a week and noted that the court wanted V.S.R. returned home to Ms. Robinette and Mr. Neeley by her birthday, September 22, 2019.

151.   V.S.R. was returned to Ms. Robinette's care on September 13, 2019.

152.   The State's seizure of V.S.R. and repeated unlawful actions keeping her out of Ms. Robinette's care and custody throughout the proceedings involving her has caused her to experience serious mental and psychological harms.

## COUNT I
### (Violation of the Freedom of Association Clause of the First Amendment and the Due Process Clause of the Fourteenth

**Amendment to the U.S. Constitution via 42 U.S.C. § 1983 – Mr. Neeley and Ms. Robinette's Right to Familial Association with A.L.N. and A.R.N.)**

153.    Plaintiffs re-allege and incorporate by reference each and every allegation set forth in paragraphs 1 through 152 above.

154.    At the time of all events relevant to this Complaint, it was well-established that the First and Fourteenth Amendments protect Ms. Robinette's and Mr. Neeley's right to familial association with A.L.N. and A.R.N.

155.    At the time of all events relevant to this Complaint, it was also well-established that, the Constitution only permitted the State to infringe upon the right to familial association by the least intrusive means possible and only to the extent necessary to accomplish a compelling State interest.

156.    Ms. Bennett first scheduled a visit for Mr. Neeley and Ms. Robinette with A.L.N. and A.R.N. on August 2, 2016, only six (6) days after the children were seized by the State. Ms. Bennett provided A.L.N. and A.R.N. with only one visit between July 27, 2016 and October 25, 2016.

157.    The visit scheduled for August 2, 2016 shows that Ms. Bennett had the ability to schedule visits but then chose not to schedule additional visits in violation of Mr. Neeley's and Ms. Robinette's constitutional right to familial association.

158.    Ms. Bennett violated Mr. Neeley's and Ms. Robinette's right to familial association with A.L.N. and A.R.N. by allowing them only one visit with their children during the first ninety (90) days after the State seized the children from them.

159.    Causing Mr. Neeley and Ms. Robinette to have only one visit with A.L.N. and A.R.N. for ninety (90) days was not the least intrusive means possible of furthering the State's purported interest in protecting A.L.N. and A.R.N. from abuse and/or neglect.

160.    No reasonable person in Ms. Bennett's position would have believed that they had lawful authority to restrict Mr. Neeley's or Ms. Robinette's right to familial association to the extent that Ms. Bennett did.

161.   Ms. Bennett had no reasonable belief that she had constitutionally infringed on Mr. Neeley and Ms. Robinette's right to familial association.

162.   Ms. Bennett acted under the color of law when she violated Mr. Neeley's and Ms. Robinette's right to familial association.

163.   As a direct and proximate result of their right to familial association being infringed upon by Ms. Bennett, Mr. Neeley and Ms. Robinette suffered irreparable harm and will continue to suffer, general and special damages in an amount not yet ascertained but which shall be shown according to proof at trial.

**COUNT II**
**(Violation of the Freedom of Association Clause of the First Amendment and the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution via 42 U.S.C. § 1983 – Ms. Robinette's Right to Familial Association with V.S.R.)**

164.   Plaintiffs re-allege and incorporate by reference each and every allegation set forth in paragraphs 1 through 163 above.

165.   At the time of all events relevant to this Complaint, it was well-established that the First and Fourteenth Amendments protect Ms. Robinette's right to familial association with V.S.R.

166.   At the time of all events relevant to this Complaint, it was also well-established that, the Constitution only permitted the State to infringe upon the right to familial association by the least intrusive means possible and only to the extent necessary to accomplish a compelling State interest.

167.   Ms. Bennett and/or Ms. Ashmore did not schedule any visits between Ms. Robinette and V.S.R. Ms. Bennett and/or Ms. Ashmore were able to provide visits for Ms. Robinette and V.S.R. but chose not to do in violation of Ms. Robinette's constitutional right to familial association.

168.   Ms. Bennett and/or Ms. Ashmore violated Ms. Robinette's right to familial association with V.S.R. by not allowing her any visits with V.S.R. during the first 198 days after V.S.R. was seized by the State.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

32

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

169.   Ms. Bennett, Ms. Ashmore, and/or Ms. Cooper violated Ms. Robinette's right to familial association with V.S.R. by consistently acting in contravention to court orders to them, or one or more of them, to schedule visitation between Ms. Robinette and V.S.R. and by attempting to end visitations once they began.

170.   Causing Ms. Robinette to have no contact with V.S.R. for 925 of the 1,082 days that V.S.R. was in DCS custody was not the least intrusive means possible of furthering the State's purported interest in protecting V.S.R. from abuse and/or neglect.

171.   No reasonable person in Ms. Bennett's, Ms. Ashmore's, and/or Ms. Cooper's positions would believe that they had constitutionally infringed on Ms. Robinette's right to familial association with V.S.R.  Ms. Bennett, Ms. Ashmore, and/or Ms. Cooper had no reasonable belief that they had constitutionally infringed on Ms. Robinette's right to familial association with V.S.R.

172.   Ms. Bennett, Ms. Ashmore, and/or Ms. Cooper acted under the color of law when they violated Ms. Robinette's right to familial association with V.S.R.

173.   As a direct and proximate result of her right to familial association being unconstitutionally infringed upon, Ms. Robinette suffered irreparable harm and will continue to suffer, general and special damages in an amount not yet ascertained but which shall be shown according to proof at trial.

**COUNT III**
**(Violation of the Search and Seizure Clause of the Fourth Amendment and the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution via 42 U.S.C. § 1983 – Unlawful Seizure of A.L.N. and A.R.N.)**

174.   Plaintiffs re-allege and incorporate by reference each and every allegation set forth in paragraphs 1 through 173 above.

175.   At the time of all events relevant to this Complaint, it was well-established that the Fourth and Fourteenth Amendments to the United States Constitution prohibit the State from seizing a child without a warrant absent exigent circumstances.

176.   No exigent circumstances existed at the time that the State seized, without a warrant, A.L.N. and A.R.N.

177.   On or about July 27, 2016, after leaving A.L.N. and A.R.N. in the custody, care, and control of Ms. Robinette and Mr. Neeley for six days during an investigation into the allegations against them, Ms. Bennett unlawfully seized A.L.N. and A.R.N. without a warrant and without exigent circumstances existing. The only reason given for the TCN, "caregiver's explanation of injuries is inconsistent with condition", was not an exigent circumstance.

178.   There were no allegations that either A.L.N. or A.R.N. had any injuries at the time they were seized.

179.   There was no reasonable belief that A.L.N. or A.R.N. would be harmed in the time that it would have taken Ms. Bennett to obtain a warrant.

180.   A.R.S. § 8-821(A) states, "[i]f a child is taken into temporary custody pursuant to this section, the child's sibling shall also be taken into temporary custody only if reasonable grounds independently exist to believe that temporary custody is clearly necessary to protect the child from suffering abuse or neglect."

181.   Ms. Bennett had no legal authority to seize A.L.N. and A.R.N. on July 27, 2016.

182.   Ms. Bennett's seizure of A.L.N. and A.R.N. on July 27, 2016 was done under the color of law.

183.   Ms. Bennett's seizure of A.L.N. and A.R.N. on July 27, 2016 violated the children's federal constitutional right not to be unlawfully seized.

184.   On or about November 29, 2018, DCS issued a press release clarifying a newspaper article regarding changes in the official DCS procedure after DCS started requiring court authorization before removing a child from their parents' care. DCS stated: "In a November 26 interview with KJZZ, a reporter stated that prior to enactment of the Court Authorized Removal law, removal decisions rested solely with the child welfare investigator. This is not and has never been the case. All child removals have always, and

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

1  still require, a thorough case review and approval by the investigator's supervisor prior to

2  DCS making a removal decision."

3     185.   Ms. Bennett seized A.L.N. and A.R.N. with the approval of her supervisor

4  Ms. McGlynn, or another DCS supervisor to be named at a later date.

5     186.   Ms. Bennett did not have authority to seize A.L.N. and A.R.N. without the

6  consent of Ms. McGlynn or another supervisor to be named at a later date.

7     187.   Arizona law mandates that DCS "adopt rules and establish clear policies and

8  procedures . . . to . . [d]etermine the circumstances under which it is appropriate to remove

9  a child from the custody of the child's parents, guardian or custodian." A.R.S. § 8-822 (1).

10    188.   In 1997, prior to Ms. Bennett's seizure of A.L.N. and A.R.N., the Ninth

11 Circuit Court of Appeals had first made it clear that the federal constitution requires DCS

12 to obtain a warrant to remove children from their parents absent exigent circumstances.

13 Despite this ruling and subsequent rulings reaffirming it, until 2018, DCS Director Mr.

14 McKay instituted and/or maintained a DCS policy that permitted DCS employees to violate

15 parents' constitutional rights by seizing a child without a warrant even in the absence of

16 exigent circumstances.

17    189.   When Ms. Bennett unlawfully seized A.L.N. and A.R.N., Ms. Bennett

18 followed the then current DCS official policy instituted and/or maintained by Mr. McKay

19 of issuing a TCN without first obtaining a warrant, even in the absence of exigent

20 circumstances.

21    190.   Mr. McKay either did not create clear and constitutionally permissible

22 policies and procedures for DCS employees to determine the circumstances under which it

23 was appropriate to seize a child from the custody of the child's parents, or he failed to train

24 DCS employees on clear and constitutionally permissible policies and procedures for DCS

25 employees to determine the circumstances under which it was appropriate to seize a child

26 from the custody of the child's parents without a warrant.

27    191.   It was clear and obvious that the policy instituted and/or maintained by Mr.

28 McKay would lead to a constitutional violation like the violation suffered by Plaintiffs, and

Mills + Woods Law, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

1   Mr. McKay was deliberately indifferent to the constitutional violations that occurred as a

2   direct result of the policy.

3       192.    As a direct and proximate result of their Fourth and Fourteenth Amendment

4   rights being unlawfully infringed upon, A.L.N. and A.R.N. suffered irreparable harm and

5   will continue to suffer general and special damages in an amount not yet ascertained but

6   which shall be shown according to proof at trial.

7                                 **COUNT IV**
8   **(Violation of the Search and Seizure Clause of the Fourth Amendment
    and the Due Process Clause of the Fourteenth Amendment to the U.S.
9   Constitution via 42 U.S.C. § 1983 – Wrongful Detention of V.S.R.,
    A.L.N, and A.R.N.)**
10

11      193.    Plaintiffs re-allege and incorporate by reference each and every allegation set

12  forth in paragraphs 1 through 192 above.

13      194.    At the time of all events relevant to this Complaint, it was well-established

14  that the Fourth and Fourteenth Amendments to the United States Constitution prohibit the

15  State continuing to detain persons absent probable cause for the continued detention.

16      195.    On or about January 25, 2017, DCS stated that it did not have probable cause

17  to show that Mr. Neeley abused V.S.R., A.L.N., or A.R.N.

18      196.    DCS never substantiated any allegation that there was probable cause that

19  Ms. Robinette abused V.S.R., A.L.N., or A.R.N.

20      197.    When DCS determined that there was no probable cause that either Mr.

21  Neeley or Ms. Robinette had abused any of the children, DCS admitted that there was no

22  probable cause to believe that Mr. Neeley or Ms. Robinette had neglected to protect the

23  children from abuse.

24      198.    Ms. Ashmore and/or Ms. Mitchum began reporting accusations of sexual

25  abuse against Mr. Neeley months after that abuse supposedly occurred and only after DCS

26  unsubstantiated the allegations of physical abuse against Mr. Neeley. These accusations do

27  not support a finding of probable cause.

28

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

199. The State conceded that the accusations of sexual abuse against Mr. Neeley did not support probable cause to detain A.L.N. and A.R.N. when it stated that the allegations of V.S.R. against Mr. Neeley had "no bearing or relevance to" whether A.L.N. and A.R.N. should be returned to Mr. Neeley and Ms. Robinette.

200. Even if the accusations against Mr. Neeley were supported by probable cause as to V.S.R., the probable cause dissipated by July 2018 once Mr. Neeley and Ms. Robinette's psychosexual analyses showed no concerns of sexual abuse, which was more than a year before V.S.R. was returned to Ms. Robinette in September 2019.

201. Ms. Bennett, Ms. McGlynn, Ms. Ashmore, and/or Ms. Mitchum violated A.L.N.'s and A.R.N.'s Fourth and Fourteenth Amendment rights by keeping them in DCS custody for 406 days without probable cause to believe that Mr. Neeley or Ms. Robinette abused or neglected them.

202. Ms. Bennett, Ms. McGlynn, Ms. Ashmore, Ms. Mitchum, Ms. Cooper, and/or Ms. Janowitz violated V.S.R.'s Fourth and Fourteenth Amendment rights by keeping her in DCS custody for 1,082 days without probable cause to believe that Mr. Neeley or Ms. Robinette had abused or neglected her.

203. No reasonable person in Ms. Bennett's, Ms. McGlynn's, Ms. Ashmore's, Ms. Mitchum's, Ms. Cooper's, and/or Ms. Janowitz's positions would have believed that they had the lawful authority to keep the children in State custody. Ms. Bennett, Ms. McGlynn, Ms. Ashmore, Ms. Mitchum, Ms. Cooper, and/or Ms. Janowitz had no reasonable belief that they had lawful authority to keep all of the children in State custody.

204. Ms. Bennett's, Ms. McGlynn's, Ms. Ashmore's, Ms. Mitchum's, Ms. Cooper's, and/or Ms. Janowitz's continued detention of the children was done under the color of law.

205. As a direct and proximate result of their Fourth and Fourteenth Amendment rights being unlawfully infringed upon, V.S.R., A.L.N., and A.R.N. suffered irreparable harm and will continue to suffer general and special damages in an amount not yet ascertained but which shall be shown according to proof at trial.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

37

**COUNT V**
**(Abuse of Process)**

206.   Plaintiffs re-allege and incorporates by reference each and every allegation set forth in paragraphs 1 through 205 above.

207.   Ms. Bennett, Ms. McGlynn, Ms. Ashmore, Ms. Mitchum, Ms. Cooper, and/or Ms. Janowitz committed abuse of process when they refused to return V.S.R., A.L.N., and A.R.N. to the custody of Mr. Neeley and/or Ms. Robinette even though they knew there was no probable cause to continue to detain those children.

208.   Ms. Bennett, Ms. McGlynn, Ms. Ashmore, Ms. Mitchum, Ms. Cooper, and/or Ms. Janowitz used the court process to keep V.S.R., A.L.N., and A.R.N away from their parents in a fashion inconsistent with the legitimate litigation goal of protecting children.

209.   Ms. Ashmore also showed that she was continuing the judicial process in a fashion inconsistent with the legitimate litigation goal of protecting children when she told Mr. Neeley, Ms. Robinette, and Ms. Dale that the judge and the State's attorney were not in charge of what happened to the children, but that she was.

210.   Ms. Ashmore further showed that she was continuing the judicial process in a fashion inconsistent with the legitimate litigation goal of protecting children when she told Mr. Neeley, Ms. Robinette, and Ms. Dale that V.S.R., A.L.N., and A.R.N. would have been returned home sooner if Mr. Neeley and Ms. Robinette had not retained private counsel.

211.   As a direct and proximate result of Ms. Bennett, Ms. McGlynn, Ms. Ashmore, Ms. Mitchum, Ms. Cooper, and/or Ms. Janowitz's abuse of process, Plaintiffs suffered and will continue to suffer general and special damages in an amount not yet ascertained but which shall be shown according to proof at trial.

**COUNT VI**
**(Gross Negligence in Carrying out their Duty to Make all Reasonable Efforts to Preserve the Family Relationship)**

Mills + Woods Law, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

38

212.   Plaintiffs re-allege and incorporate by reference each and every allegation set forth in paragraphs 1 through 211 above.

213.   "It is well established that the State, before acting to terminate parental rights, has an affirmative duty to make all reasonable efforts to preserve the family relationship." *Mary Ellen C. v. Arizona Dep't of Econ. Sec.*, 193 Ariz. 185, 186, ¶ 1 (App. 1999). This duty is "defined [] on constitutional grounds." *Id.* at 192, ¶32.

214.   Ms. Bennett and/or Ms. McGlynn exercised gross negligence in their breach of their duty to make reasonable efforts when they failed to provide important information to Ms. Robinette and Mr. Neeley prior to the dependency hearing.

215.   Ms. Bennett and Ms. McGlynn exercised gross negligence in their breach of their duty to make reasonable efforts when they provided Ms. Robinette and Mr. Neeley with only one visit with A.L.N. and A.R.N. during the first ninety (90) days after the children were seized.

216.   Ms. Bennett, Ms. McGlynn, Ms. Ashmore, and/or Ms. Mitchum, exercised gross negligence in their breach of their duty to make reasonable efforts when they refused to provide visitation between Ms. Robinette and V.S.R. during the first 198 days after V.S.R. was seized.

217.   Ms. Bennett, Ms. McGlynn, Ms. Ashmore, and/or Ms. Mitchum, exercised gross negligence in their breach of their duty to make reasonable efforts when they failed to provide any reunification services to Ms. Robinette and Mr. Neeley until six (6) months after the children were seized.

218.   Ms. Ashmore, Ms. Mitchum, Ms. Cooper, and/or Ms. Janowitz exercised gross negligence in their breach of their duty to make reasonable efforts when they consistently attempted to prevent or halt visitation between Ms. Robinette and V.S.R., resulting in V.S.R. only seeing her mother for 69.5 hours over the 1,082 days that V.S.R. was in State custody. V.S.R. was restricted from seeing her mother without good cause for a total of 925 days while she was in State custody.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

39

219.   Ms. Ashmore, Ms. Mitchum, Ms. Cooper, and/or Ms. Janowitz exercised gross negligence in their breach of their duty to make reasonable efforts when they consistently attempted to prevent or halt visitation between A.L.N., A.R.N, and V.S.R. without good cause.

220.   Ms. Bennett, Ms. McGlynn, Ms. Ashmore, Ms. Mitchum, Ms. Cooper, and/or Ms. Janowitz exercised gross negligence in their breach of their duty to make reasonable efforts when they consistently lied to the court regarding the status of the case and the status of Mr. Neeley's and Ms. Robinette's progress and/or psychological evaluations.

221.   As a direct and proximate result of Ms. Bennett's, Ms. McGlynn's, Ms. Ashmore's, Ms. Mitchum's, Ms. Cooper's, and Ms. Janowitz's breach of their duty of care, Plaintiffs suffered irreparable harm and will continue to suffer general and special damages in an amount not yet ascertained but which shall be shown according to proof at trial.

## COUNT VII
### (Gross Negligence in Carrying out their Duty to Protect the Legal Rights of Children and Families)

222.   Plaintiffs re-allege and incorporate by reference each and every allegation set forth in paragraphs 1 through 221 above.

223.   Under A.R.S. 8-802(D)(1), "[a]ll child safety workers shall be trained and demonstrate competency in [their] duty to protect the legal rights of children and families from the time of the initial contact through treatment."

224.   "A statute or regulation typically gives rise to a tort duty premised on public policy only if it is designed to protect the class of persons, in which the plaintiff is included, against the risk of the type of harm which has in fact occurred as a result of its violation." *Lorenz v. State*, 238 Ariz. 556, 558 (App. 2015).

225.   Ms. Bennett, Ms. McGlynn, Ms. Ashmore, Ms. Mitchum, Ms. Cooper, and/or Ms. Janowitz owed a legal duty to all Plaintiffs to protect the legal rights of their family throughout the dependency proceedings.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

40

226.   Ms. Bennett and/or Ms. McGlynn exercised gross negligence in their breach of their duty to protect the legal rights of the family when they failed to provide important information to Ms. Robinette and Mr. Neeley prior to the dependency hearing.

227.   Ms. Bennett and/or Ms. McGlynn exercised gross negligence in their breach of their duty to protect the legal rights of the family when they failed to provide A.L.N. and A.R.N. with more than one visit with Ms. Robinette and Mr. Neeley during the first ninety (90) days after the children were seized.

228.   Ms. Bennett, Ms. McGlynn, Ms. Ashmore, and/or Ms. Mitchum exercised gross negligence in their breach of their duty to protect the legal rights of the family when they refused to provide visitation, including therapeutic visitation, between Ms. Robinette and V.S.R. during the first 198 days after V.S.R. was seized.

229.   Ms. Ashmore, Ms. Mitchum, Ms. Cooper, and/or Ms. Janowitz exercised gross negligence in their breach of their duty to protect the legal rights of the family when they consistently attempted to prevent or halt visitation, including therapeutic visitation, between Ms. Robinette and V.S.R., resulting in V.S.R. only seeing her mother for 69.5 hours over the 1,082 days that V.S.R. was in State custody. V.S.R. was restricted from seeing her mother without good cause for a total of 925 days while she was in State custody.

230.   Ms. Bennett, Ms. McGlynn, Ms. Ashmore, Ms. Mitchum, Ms. Cooper, and/or Ms. Janowitz exercised gross negligence in their breach of their duty to protect the legal rights of the family when they consistently lied to the court regarding the status of the case and the status of Mr. Neeley's and Ms. Robinette's progress and/or psychological evaluations.

231.   As a direct and proximate result of Ms. Bennett's, Ms. McGlynn's, Ms. Ashmore's, Ms. Mitchum's, Ms. Cooper's, and/or Ms. Janowitz's breach of their duty, Plaintiffs suffered irreparable harm to their family and will continue to suffer general and special damages in an amount not yet ascertained but which shall be shown according to proof at trial.

Mills + Woods Law, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

**COUNT VIII**
**(Intentional Infliction of Emotional Distress)**

232.    Plaintiffs re-allege and incorporate by reference each and every allegation set forth in paragraphs 1 through 231 above.

233.    Ms. Ashmore's, Ms. Cooper's, Ms. Thomas's, and/or Dr. De Soler's decision to keep V.S.R. from Ms. Robinette for extended periods of time, including two periods of almost a year, either without visitation or with only one visit, without cause, was extreme and outrageous.

234.    Ms. Ashmore and/or Ms. Thomas both acted with either intent to cause emotional distress or recklessly disregarded the near certainty that such distress would result from their conduct when they restricted visits between V.S.R. and her family, even though they knew that V.S.R. became so upset after her visits with Ms. Robinette were suspended that V.S.R.'s foster family called the police due to V.S.R.'s behavior.

235.    Ms. Ashmore and/or Ms. Thomas both acted with either intent to cause emotional distress or recklessly disregarded the near certainty that such distress would result from their conduct when they restricted V.S.R.'s visits with Ms. Robinette, A.L.N., and A.R.N., even though they knew that V.S.R. feared her family members were dead when the visits were restricted.

236.    Ms. Ashmore and/or Ms. Thomas finally relented and allowed V.S.R. to begin visiting with A.L.N. and A.R.N. only after her psychiatric hospitalization. Despite their knowledge of V.S.R.'s fear, and despite their understanding that this fear lead to V.S.R.'s psychiatric hospitalization, Ms. Ashmore and/or Ms. Thomas continued to deny V.S.R. visitation or contact with Ms. Robinette and/or her siblings for extended periods of time.

237.    Ms. Cooper, and/or Dr. De Soler both acted with either intent to cause emotional distress or recklessly disregarded the near certainty that such distress would result from their conduct when they knew that V.S.R.'s psychological hospitalization was a direct result of their decision to restrict V.S.R. from visiting with Ms. Robinette and

42

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

1    A.L.N. and A.R.N., but yet they intentionally persisted in denying V.S.R. visitation or

2    contact with Ms. Robinette for numerous extended periods of time, up to a year at a time.

3            238.    V.S.R. suffered such severe emotional distress from the actions of Ms.

4    Ashmore and/or Ms. Thomas that she was psychiatrically hospitalized.

5            239.    V.S.R. continued to suffer such severe emotional distress from the actions of

6    Ms. Ashmore, Ms. Thomas, Ms. Cooper, and/or Dr. De Soler that in February 2019, it was

7    thought V.S.R. would have to be institutionalized.

8            240.    V.S.R. will likely continue to suffer emotional distress for the rest of her life.

9            241.    As a direct and proximate result of Ms. Bennett's, Ms. Ashmore's, Ms.

10    Cooper's, Ms. Thomas's, and/or Dr. De Soler's actions, V.S.R. suffered irreparable harm

11    and will continue to suffer general and special damages in an amount not yet ascertained

12    but which shall be shown according to proof at trial.

13                               **COUNT IX**

14                             **(Malpractice)**

15            242.    Plaintiffs re-allege and incorporate by reference each and every allegation set

16    forth in paragraphs 1 through 241 above.

17            243.    Ms. Thomas and/or Dr. De Soler had a duty to provide the minimum accepted

18    standard of care in their treatment of V.S.R.

19            244.    Ms. Thomas and/or Dr. De Soler breached their duty and failed to provide

20    the minimum accepted standard of care in their treatment of V.S.R.

21            245.    As a direct and proximate result of Ms. Thomas's, and/or Dr. De Soler's

22    failure to satisfy the minimum accepted standard of care, V.S.R. suffered irreparable harm

23    and will continue to suffer general and special damages in an amount not yet ascertained

24    but which shall be shown according to proof at trial.

25                               **COUNT X**

26      **(Negligent Hiring, Training, Supervision, and Retention)**

27            246.    Plaintiffs re-allege and incorporate by reference each and every allegation set

28    forth in paragraphs 1 through 245 above.

247.   Defendants State of Arizona, DCS, and McKay owed a duty to Plaintiffs to ensure their employees, officers, and agents were qualified to serve in their respective roles before hiring and assigning employees to act as investigators and/or case managers for DCS.

248.   Defendants State of Arizona, DCS, and McKay also owed a duty to Plaintiffs to ensure that their employees, officers, and agents were properly trained and possessed the skill and knowledge to perform their assigned job tasks in a competent manner.

249.   Defendant Grossman & Grossman, Ltd. owed a duty to Plaintiffs to ensure its employees, officers, and agents were qualified to serve in their respective roles before hiring and assigning employees to act as therapists under contract with DCS.

250.   Defendant Grossman & Grossman also owed a duty to Plaintiffs to ensure that its employees, officers, and agents were properly trained and possessed the skill and knowledge to perform their assigned job tasks in a competent manner.

251.   Defendant Dr. Heather De Soler, PLLC owed a duty to Plaintiffs to ensure its employees, officers, and agents were qualified to serve in their respective roles before hiring and assigning employees to act as therapists under contract with DCS.

252.   Defendant Dr. Heather De Soler also owed a duty to Plaintiffs to ensure that its employees, officers, and agents were properly trained and possessed the skill and knowledge to perform their assigned job tasks in a competent manner.

253.   As set forth above, Defendants State of Arizona, DCS, McKay, Grossman & Grossman, Ltd., and Dr. Heather De Soler, PLLC breached these duties.

254.   As a direct and proximate result of Defendants' breaches of these duties, Plaintiffs were damaged in that they, among other things, were denied their constitutionally protected individual and familial rights thereby suffering damages from the loss of familial relationships for extended periods of time during formative times in the lives of the children and the family, and Plaintiffs will continue to suffer such damages into the future, all in an amount that will be demonstrated at trial.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556



**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for relief against Defendants as follows:

A. General damages and special damages according to proof, but in no event less than $5,000,000.00, including, but not limited to economic losses, medical costs, hedonic damages, psychological trauma, and emotional distress against each and every Defendant, jointly and severally;

B. For taxable costs and pre- and post-judgment interest to the extent permitted by law;

C. For exemplary and/or punitive damages against each and every Defendant in an amount appropriate to punish the wrongful conduct alleged herein and to deter such conduct in the future;

D. For attorneys' fees and expenses pursuant to 42 U.S.C. § 1988 as applicable and/or as otherwise authorized by any other statute or law; and,

E. For such other relief as the Court deems just and proper under the circumstances.

**RESPECTFULLY SUBMITTED** this 6th day of November 2019.

       MILLS + WOODS LAW PLLC

       By_____
        Thomas A. Connelly
        Robert T. Mills
        Sean A. Woods
        5055 North 12th Street, Suite 101
        Phoenix, AZ 85014
        *Attorneys for Plaintiffs*

**ORIGINAL** of the foregoing filed this 6th day of November 2019 with the Clerk of the Maricopa County Superior Court

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

45

Person Filing: John M. Macaulay, Jr.
Address (if not protected): 5055 N 12th St., Ste 101
City, State, Zip Code: Phoenix, AZ 85014
Telephone: 480-999-4556
Email Address: docket@millsandwoods.com
Lawyer's Bar Number: Thomas A. Connelly: 019430

CLERK OF THE SUPERIOR COURT
FILED
NOV 0 6 2019 5:33pm
S. Vega, Deputy
FOR CLERK'S USE ONLY

Representing ☐ Self, without a Lawyer   or   ☒ Attorney for ☒ Petitioner   OR   ☐ Respondent

# SUPERIOR COURT OF ARIZONA
# IN MARICOPA COUNTY

AUSTIN NEELEY, BRITTANY ROBINETTE,

V.S.R., A.L.N., AND A.R.N.
PLAINTIFF,

vs.

STATE OF ARIZONA, ARIZONA DEPARTMENT

OF CHILD SAFETY, ADDITIONAL ATTACHED
DEFENDANT.

Case Number: CV 2019-014318

## CERTIFICATE OF COMPULSORY ARBITRATION

The undersigned certifies that the largest award sought by the complainant, including punitive damages, but excluding interest, attorneys' fees, and costs does / **does not** exceed limits set by Local Rule for compulsory arbitration.  This case **is** / is not subject to compulsory arbitration as provided in Rules 72 through 77 of the Rules of Civil Procedure.

SUBMITTED this 6th day of November , 20 17 .

BY

© Superior Court of Arizona in Maricopa County
ALL RIGHTS RESERVED

Page 1 of 1

CV00f - 030617
Use current version

CERTIFICATE OF COMPULSORY ARBITRATION ATTACHMENT

Additional Defendants:

- BARBARA BENNETT, individually as an employee with the State of Arizona Department of Child Safety and JOHN DOE BENNETT, her spouse;
- LAURA MCGLYNN, individually as an employee with the State of Arizona Department of Child Safety and JOHN DOE MCGLYNN, her spouse;
- SHELLEY ASHMORE, individually as an employee with the State of Arizona Department of Child Safety and JOHN DOE ASHMORE, her spouse;
- PHYLLIS MITCHUM, individually as an employee with the State of Arizona Department of Child Safety and JOHN DOE MITCHUM, her spouse;
- STEPHANIE COOPER, individually as an employee with the State of Arizona Department of Child Safety and JOHN DOE COOPER, her spouse;
- JEANNINE JANOWITZ, individually as an employee with the State of Arizona Department of Child Safety and JOHN DOE JANOWITZ, her spouse;
- ANDREA THOMAS, individually as a Safety provider for the State of Arizona Department of Child Safety and JOHN DOE THOMAS, her spouse;
- GROSSMAN & GROSSMAN, LTD, an Arizona corporation as a Safety provider for the State of Arizona Department of Child Safety;
- HEATHER DE SOLER, individually as a Safety provider for the State of Arizona Department of Child Safety and JOHN DOE DE SOLER, her spouse;
- DR. HEATHER DE SOLER PLLC, an Arizona professional limited liability company as a Safety provider for the State of Arizona Department of Child Safety;
- GREGORY MCKAY, individually as Director, Arizona Department of Child Safety and JANE DOE MCKAY, his spouse;
- JOHN and JANE DOES 1-5; and
- BLACK ENTITITES 1-5

**In the Superior Court of the State of Arizona**

**In and For the County of** Maricopa

# CV2019-014318

CIVIL COVER SHEET - NEW FILING ONLY
(Please Type or Print)

Plaintiff's Attorney ___Thomas Connelly___

Attorney Bar Number ___019430___

| | |
|---|---|
| Is Interpreter Needed? ☐ Yes  ☒ No | |
| If yes, what language(s): | |
| | CLERK OF THE SUPERIOR COURT |
| | FILED |
| | NOV 0 6 2019  5:22pm |
| | S. Vega, Deputy |

Plaintiff's Name(s): (List all)     Plaintiff's Address:          Phone #:          Email Address:
Austin Neeley              407 W. 12th Street, Eloy, AZ, 85131

Brittany Robinette          407 W. 12th Street, Eloy, AZ, 85131

V.S.R., a minor through her parent and guardian, Brittany Robinette

(List additional Plaintiffs on page two and/or attach a separate sheet).

Defendant's Name(s): (List All)
State of Arizona

Arizona Department of Child Safety

(List additional Defendants on page two and/or attach a separate sheet)

## RULE 26.2 DISCOVERY TIER OR MONETARY RELIEF CLAIMED:

**IMPORTANT: Any case category that has an asterisk (\*) MUST have a dollar amount claimed or Tier selected.** State the monetary amount in controversy or place an "X" next to the discovery tier to which the pleadings allege the case would belong under Rule 26.2.

☒ Amount Claimed $___5,000,000___          ☐ Tier 1          ☐ Tier 2          ☒ Tier 3

## NATURE OF ACTION

Place an "X" next to the **one** case category that most accurately describes your primary case. **Any case category that has an asterisk (\*) MUST have a dollar amount claimed or Tier selected as indicated above.**

## 100 TORT MOTOR VEHICLE:

☐ 101 Non-Death/Personal Injury\*

☐ 102 Property Damage\*
☐ 103 Wrongful Death\*

Case No._____

## 110 TORT NON-MOTOR VEHICLE:

- ☐ 111 Negligence*
- ☐ 112 Product Liability – Asbestos*
- ☐ 112 Product Liability – Tobacco*
- ☐ 112 Product Liability – Toxic/Other*
- ☐ 113 Intentional Tort*
- ☐ 114 Property Damage*
- ☐ 115 Legal Malpractice*
- ☐ 115 Malpractice – Other professional*
- ☐ 117 Premises Liability*
- ☐ 118 Slander/Libel/Defamation*
- ☐ 116 Other (Specify) _____*

## 120 MEDICAL MALPRACTICE:

- ☐ 121 Physician M.D.*        ☐ 123 Hospital*
- ☐ 122 Physician D.O*         ☐ 124 Other*

## 130 & 197 CONTRACTS:

- ☐ 131 Account (Open or Stated)*
- ☐ 132 Promissory Note*
- ☐ 133 Foreclosure*
- ☐ 138 Buyer-Plaintiff*
- ☐ 139 Fraud*
- ☐ 134 Other Contract (i.e. Breach of Contract)*
- ☐ 135 Excess Proceeds-Sale*
- ☐ Construction Defects (Residential/Commercial)*
  - ☐ 136 Six to Nineteen Structures*
  - ☐ 137 Twenty or More Structures*
- ☐ 197 Credit Card Debt (Maricopa County Only)*

## 150-199 OTHER CIVIL CASE TYPES:

- ☐ 156 Eminent Domain/Condemnation*
- ☐ 151 Eviction Actions (Forcible and Special Detainers)*
- ☐ 152 Change of Name
- ☐ 153 Transcript of Judgment
- ☐ 154 Foreign Judgment

- ☐ 158 Quiet Title*
- ☐ 160 Forfeiture*
- ☐ 175 Election Challenge
- ☐ 179 NCC-Employer Sanction Action (A.R.S. §23-212)
- ☐ 180 Injunction against Workplace Harassment
- ☐ 181 Injunction against Harassment
- ☐ 182 Civil Penalty
- ☐ 186 Water Rights (Not General Stream Adjudication)*
- ☐ 187 Real Property *
- ☐ Special Action against Lower Courts
  (See Lower Court Appeal cover sheet in Maricopa)
- ☐ 194 Immigration Enforcement Challenge
  (A.R.S. §§1-501, 1-502, 11-1051)

## 150-199 UNCLASSIFIED CIVIL:

- ☐ Administrative Review
  (See Lower Court Appeal cover sheet in Maricopa)
- ☐ 150 Tax Appeal
  (All other tax matters must be filed in the AZ Tax Court)
- ☐ 155 Declaratory Judgment
- ☐ 157 Habeas Corpus
- ☐ 184 Landlord Tenant Dispute – Other*
- ☐ 190 Declaration of Factual Innocence (A.R.S. §12-771)
- ☐ 191 Declaration of Factual Improper Party Status
- ☐ 193 Vulnerable Adult (A.R.S. §46-451)*
- ☐ 165 Tribal Judgment
- ☐ 167 Structured Settlement (A.R.S. §12-2901)
- ☐ 169 Attorney Conservatorships (State Bar)
- ☐ 170 Unauthorized Practice of Law (State Bar)
- ☐ 171 Out-of-State Deposition for Foreign Jurisdiction
- ☐ 172 Secure Attendance of Prisoner
- ☐ 173 Assurance of Discontinuance
- ☐ 174 In-State Deposition for Foreign Jurisdiction
- ☐ 176 Eminent Domain– Light Rail Only*
- ☐ 177 Interpleader– Automobile Only*
- ☐ 178 Delayed Birth Certificate (A.R.S. §36-333.03)
- ☐ 183 Employment Dispute- Discrimination*

Case No._____

☐ 185 Employment Dispute-Other*

☒ 163 Other*

☐ 196 Verified Rule 45.2 Petition

First Amendment, Freedom of Association

☐ 195(a) Amendment of Marriage License

(Specify)

☐ 195(b) Amendment of Birth Certificate

## EMERGENCY ORDER SOUGHT

☐ Temporary Restraining Order        ☐ Provisional Remedy        ☐ OSC        ☐ Election Challenge

☐ Employer Sanction        ☐ Other (Specify) _____

## COMMERCIAL COURT (Maricopa County Only)

☐ This case is eligible for the Commercial Court under Rule 8.1, and Plaintiff requests assignment of this case to the Commercial Court. More information on the Commercial Court, including the most recent forms, are available on the Court's website at:

https://www.superiorcourt.maricopa.gov/commercial-court/.

**Additional Plaintiff(s):**

_____

_____

**Additional Defendant(s):**

_____

_____

© Superior Court of Arizona in Maricopa County        Page 3 of 3        CV10f - 010119

CIVIL COVER SHEET ATTACHMENT

Additional Plaintiffs:

- A.L.N., a minor, through her parents and guardians Austin Neeley and Brittany Robinette;
- A.R.N., a minor, through her parents and guardians Austin Neeley and Brittany Robinette,


Additional Defendants:

- BARBARA BENNETT, individually as an employee with the State of Arizona Department of Child Safety and JOHN DOE BENNETT, her spouse;
- LAURA MCGLYNN, individually as an employee with the State of Arizona Department of Child Safety and JOHN DOE MCGLYNN, her spouse;
- SHELLEY ASHMORE, individually as an employee with the State of Arizona Department of Child Safety and JOHN DOE ASHMORE, her spouse;
- PHYLLIS MITCHUM, individually as an employee with the State of Arizona Department of Child Safety and JOHN DOE MITCHUM, her spouse;
- STEPHANIE COOPER, individually as an employee with the State of Arizona Department of Child Safety and JOHN DOE COOPER, her spouse;
- JEANNINE JANOWITZ, individually as an employee with the State of Arizona Department of Child Safety and JOHN DOE JANOWITZ, her spouse;
- ANDREA THOMAS, individually as a Safety provider for the State of Arizona Department of Child Safety and JOHN DOE THOMAS, her spouse;
- GROSSMAN & GROSSMAN, LTD, an Arizona corporation as a Safety provider for the State of Arizona Department of Child Safety;
- HEATHER DE SOLER, individually as a Safety provider for the State of Arizona Department of Child Safety and JOHN DOE DE SOLER, her spouse;
- DR. HEATHER DE SOLER PLLC, an Arizona professional limited liability company as a Safety provider for the State of Arizona Department of Child Safety;
- GREGORY MCKAY, individually as Director, Arizona Department of Child Safety and JANE DOE MCKAY, his spouse;
- JOHN and JANE DOES 1-5; and
- BLACK ENTITITES 1-5